# Bureau of Special Investigations *vs.* Coalition of Public Safety.

Suffolk. November 4, 1999. - January 20, 2000.

Present: Marshall, C.J., Abrams, Lynch, Greaney, Ireland, Spina, & Cowin, JJ.

*Arbitration,* Judicial review, Award, Collective bargaining. *Public Policy.*

Discussion of the standard of judicial review of arbitrators' awards and discussion of cases in which an arbitrator's award was challenged on public policy grounds. [602-605]

An arbitrator's award reinstating two dismissed public employees, who in the performance of their employment duties improperly and without authorization gained access to confidential tax records of certain taxpayers, was not itself in violation of public policy, where no public policy regarding confidentiality of such records would require the discharge of the employees for its fulfillment; a Superior Court judge correctly concluded that there was no ground for vacating the arbitrator's decision reducing the terminations to three-month suspensions without pay. [605-606]

Civil action commenced in the Superior Court Department on August 1, 1997.

The case was heard by *Patrick J. King,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Judith S. Yogman,* Assistant Attorney General, for the plaintiff.

*Neil F. Colleran* for the defendant.

Abrams, J. The Bureau of Special Investigations (BSI) appeals from a judgment of a Superior Court judge allowing the Coalition of Public Safety's (union's) motion for summary judgment. BSI sought the vacation of an arbitrator's award reinstating Shawn Maloney and Carl Morton, two BSI investigators who were terminated after accessing confidential tax records without authorization. BSI and the union, which represents Maloney and Morton, filed cross motions for summary judgment. The judge allowed the union's motion in a marginal order, stating that "there is no basis justifying vacating the arbitration

award." We transferred the case here on our own motion. We affirm the Superior Court judge's order allowing the union's motion for summary judgment.

1. *Facts.* We recite the undisputed facts. BSI is a government agency charged with investigating complaints of fraud related to assistance programs administered by the Department of Transitional Assistance and the Department of Social Services. Through an agreement with the Department of Revenue (DOR), Maloney and Morton, as BSI investigators, had "on-line" access to a computerized database of wage reports of Massachusetts taxpayers.[1] In September, 1996, a DOR investigation revealed that Maloney and Morton had used their access to DOR records to examine the tax records of various Boston sports celebrities and three BSI managers.[2] Because the individuals whose records were accessed were not under investigation by BSI, the DOR terminated BSI's access to confidential tax information. BSI discharged Maloney and Morton.

Pursuant to the collective bargaining agreement between BSI and the union, the union filed grievances protesting the discharges. The grievances were submitted to binding arbitration. The arbitrator concluded that "Shawn Maloney and Carl Morton were discharged without just cause." The arbitrator noted a number of factors that he considered "extenuating." He found that Morton and Maloney did not disclose any confidential information, did not gain anything from their unauthorized access to the files, and readily admitted culpability and responsibility for their actions. But see note 2, *supra.* The arbitrator's award specified that the terminations be reduced to three-month suspensions without pay.

2. *Standard of review.* BSI asks us to vacate the arbitrator's award reinstating Maloney and Morton because enforcement of the award would undermine the public's interest in keeping tax

---

[1]General Laws c. 22, § 15D (3), authorizes the director of the Bureau of Special Investigations (BSI) to "[e]xamine upon written request to the commissioner of revenue the tax returns, wage reports, papers or other documents on file with said commissioner . . . concerning any person where there is reason to believe that such person has committed fraud . . . ." Through a special arrangement with the Department of Revenue (DOR), BSI investigators were given access to these records.

[2]Morton and Maloney admitted to accessing the records of the sports celebrities, but not to accessing the records of the BSI managers.

records confidential. According to BSI, we should review the arbitrator's decision de novo. We do not agree.

"The role of courts in reviewing an arbitrator's award is limited." *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester*, 392 Mass. 184, 187 (1984), citing G. L. c. 150C, § 11. Judges may not vacate an arbitrator's award except in the circumstances set forth in G. L. c. 150C, § 11. See *Massachusetts Highway Dep't* v. *American Fed'n of State, County & Mun. Employees, Council 93*, 420 Mass. 13, 15 (1995), citing *Concerned Minority Educators of Worcester, supra*; and *School Comm. of W. Springfield* v. *Korbut*, 373 Mass. 788, 792 (1977). Only G. L. c. 150C, § 11 (*a*) (3), has potential application in this case. General Laws c. 150C, § 11 (*a*) (3), provides that: "Upon application of a party, the superior court shall vacate an award if: — . . . the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law." "Arbitration, it is clear, may not 'award relief of a nature which offends public policy . . . .' " *Lawrence* v. *Falzarano*, 380 Mass. 18, 28 (1980), quoting S.E. Eager, The Arbitration Contract and Proceedings § 121.6 (1971).

Arbitrators are limited to considering matters encompassed by the collective bargaining or other agreements. Arbitrators do not have the authority to take into consideration the public policy implications of their awards. See, e.g., *Iowa Elec. Light & Power Co.* v. *Local Union 204 of the Int'l Bhd. of Elec. Workers*, 834 F.2d 1424, 1427 (8th Cir. 1987), quoting *W.R. Grace & Co.* v. *Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 766 (1983). Also, courts may not enforce contracts or agreements that violate strong public policy. Therefore, "the question of public policy is ultimately one for resolution by the courts" and not by arbitrators. *Massachusetts Highway Dep't, supra* at 16 n.5, quoting *W.R. Grace & Co., supra*; *Exxon Corp.* v. *Esso Workers' Union, Inc.*, 118 F.3d 841, 845 (1st Cir. 1997).

We start with the principle that there is a "strong public policy favoring arbitration." *Massachusetts Highway Dep't, supra* at 16, quoting *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990).[3] See *International Bhd. of Elec. Workers, Local 97* v. *Niagara Mohawk*

---

[3]We disagree with BSI's assertion that, "where an employee's conduct violates a well-defined public policy, an arbitrator's award interpreting the col-

*Power Corp.*, 143 F.3d 704, 714 (2d Cir. 1998); *W.R. Grace & Co., supra* at 764. Thus, because the public policy "doctrine allows courts to by-pass the normal heavy deference accorded to arbitration awards and potentially to 'judicialize' the arbitration process, the judiciary must be cautious about overruling an arbitration award on the ground that it conflicts with public policy." *E.I. DuPont de Nemours & Co.* v. *Grasselli Employees Indep. Ass'n of E. Chicago*, 790 F.2d 611, 615 (7th Cir.), cert. denied, 479 U.S. 853 (1986), and cases cited.[4]

3. *Discussion.* We have vacated (or affirmed the vacation of) an arbitrator's award under G. L. c. 150C, § 11 (*a*) (3), where that award directly conflicts with statutory provisions. See, e.g., *Watertown Firefighters, Local 1347* v. *Watertown*, 376 Mass. 706, 713-714 (1978); *School Comm. of Hanover* v. *Curry*, 369 Mass. 683, 685 (1976). See also *Boston* v. *Boston Police Patrolmen's Ass'n*, 8 Mass. App. Ct. 220, 227 (1979). However, in *Massachusetts Highway Dep't, supra*, the Commonwealth asked that an arbitrator's award be vacated because "it 'violate[d] the Commonwealth's explicit, well-defined, and dominant public policy against the unauthorized possession of handguns.' " *Id.* at 14. The arbitrator's award in that case ordered the reinstatement of a highway department employee who was terminated after a loaded handgun was found in his locked toolbox. *Id.* at 13-14. We held that the Commonwealth had not established that the award violated public policy to such an extent that it required vacation. We also implicitly set forth several prerequisites for establishing that an award violates public policy.

First, we wrote that, "[t]o be vindicated, public policy 'must be well defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from general

lective bargaining agreement to require the reinstatement . . . also offends the public policy." Such a conclusion would weaken the policy favoring arbitration. It is unclear what effect such a rule would have on collective bargaining agreements.

[4]See *Delta Air Lines, Inc.* v. *Air Line Pilots Ass'n, Int'l,* 861 F.2d 665, 670 (11th Cir. 1988), cert. denied, 493 U.S. 871 (1989) ("[E]xamples of arbitration results that so offend public policy that they should be set aside by a court are not readily to be found. This is not surprising. An arbitrator's result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet it may not be subject to court interference. The offending arbitrator's award which properly results in our setting it aside must be so offensive that one is to be seen only rarely").

considerations of supposed public interests." ' " *Id.* at 16, quoting *W.R. Grace & Co.*, *supra* at 766. Second, we noted that the conduct involved cannot be "disfavored conduct in the abstract." *Massachusetts Highway Dep't, supra* at 17. Rather, to implicate public policy, an arbitrator's award must order reinstatement after an employee has engaged in "disfavored conduct which is *integral to the performance of employment duties.*" *Id.*, quoting *Delta Air Lines, Inc.* v. *Air Line Pilots Ass'n, Int'l*, 861 F.2d 665, 671 (11th Cir. 1988), cert. denied, 493 U.S. 871 (1989). Finally, we required a showing that the arbitrator's award reinstating the employee violates public policy to such an extent that the employee's conduct would have required dismissal. *Massachusetts Highway Dep't, supra* at 19. Merely showing that the conduct is "disfavored" by public policy is not sufficient. *Id.*, citing *United States Postal Serv.* v. *National Ass'n of Letter Carriers*, 839 F.2d 146, 149-150 (3d Cir. 1988); *Lansing Community College* v. *Lansing Community College Chapter of the Michigan Ass'n for Higher Educ.*, 161 Mich. App. 321, 333 (1987), vacated and remanded, 429 Mich 895, reaffirmed without decision, 171 Mich. App. 172 (1988) ("If an award is permissible, even if not optimal for the furtherance of public policy goals, it must be upheld. Arbitration awards reinstating employees are therefore upheld if the public policy, while disfavoring the employees' conduct, does not require dismissal").

BSI satisfies the first two of these requirements. BSI adequately supports its claim that there is a "well-defined and dominant" public policy of protecting confidential tax information against unauthorized access.[5] It is also clear that Morton and Maloney's conduct in accessing confidential tax records, unlike the conduct involved in the *Massachusetts Highway Dep't* case was integral and directly related to the performance of their duties at BSI.

BSI's claim fails, however, because no public policy "require[s] dismissal" of employees who access confidential tax records without authorization. *Massachusetts Highway Dep't,*

[5]BSI cites a number of statutes in support of this claim. See, e.g., G. L. c. 14, § 1 (declaring that "the promotion of . . . trust and confidence in the [DOR] is a paramount public purpose"); G. L. c. 22, § 15D (3) (authorizing director of BSI to examine DOR records of an individual only "where there is reason to believe that such person has committed fraud under any assistance program"); G. L. c. 62D, § 10 (limiting use of information disclosed by the DOR to other agencies).

*supra* at 17, and cases cited. In this respect, the circumstances in this case are precisely like those in *Massachusetts Highway Dep't, supra.* "The applicable collective bargaining agreement gave the arbitrator the authority to impose a less severe sanction than termination." *Id.* at 20. Although Morton and Maloney violated public policies embodied by statutes protecting confidential tax information, the collective bargaining contract did not require dismissal. "While [Morton and Maloney's] conduct 'would have provided sufficient grounds for an arbitrator to find "just cause" for discharge, we recognize that the parties bargained for the arbitrator's interpretation of the contract and that even our strong disagreement with the result does not provide sufficient grounds for vacating the arbitrator's award.' " *Id.* at 21, quoting *State Auditor* v. *Minnesota Ass'n of Professional Employees*, 504 N.W.2d 751, 757-758 (Minn. 1993).

BSI and the union negotiated a collective bargaining agreement in which they gave the arbitrator final authority to sanction employees who commit misconduct such as that committed by Morton and Maloney. The arbitrator recognized that the "unauthorized examination" of the confidential records "was inappropriate conduct" and that "the grievants had no right to examine . . . private tax files." The arbitrator's award specified a three-month suspension without pay. "The arbitrator, as final judge of the proper means of discipline, concluded that this, in addition to a record of wrongful conduct, was sufficient disciplinary action." *Massachusetts Highway Dep't, supra* at 21.

We see no reason to overturn the arbitrator's award as BSI requests. "Deference is premised on the simple notion that courts do not free the individual from his obligations merely because those obligations have turned sour on him." *Stead Motors of Walnut Creek* v. *Automotive Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 886 F.2d 1200, 1206 (9th Cir. 1989), cert. denied, 495 U.S. 946 (1990).

*Judgment affirmed.*