van Gestel, J.
This matter is before the Court on the Plaintiff s Motion for Summary Judgment (Paper #12) and its related Motion to Stay Litigation Pending Arbitration (Paper #14). The facts which follow are undisputed.
BACKGROUND
In December of 2000, the defendant, Alfred L. Arcidi (“Arcidi”), retained the law firm of Todd & Weld, LLP (“Todd & Weld”) to represent himself, Angelo Marotta and Louise Marotta in connection with a lawsuit in the Essex County Superior Court (the “Essex case”) filed against Arcidi and the Marottas on December 13, 2000, by Joseph Caruso, Jr., John Caruso and Frank Caruso, Jr. (collectively, “the Carusos”). The Essex case centered on the purchase and management of Caruso Music, Inc. and Foods, Inc. of Saugus by Arcidi and the Marottas. The suit was for money damages from the defendants, the appointment of a receiver for Foods, Inc. and Caruso Music, Inc., an injunction preventing the defendants from selling or transferring their interests in theses businesses, and a full and complete accounting.
Arcidi signed an engagement letter with Todd & Weld in connection with its representation of him and the Marottas. This engagement letter provided that the charges for legal services were based on hourly rates that Todd & Weld generally billed monthly, and that “bills are due and payable within fifteen (15) days.”
The engagement letter further provided that “(t]he engagement may be terminated by either parly subject to the payment of all final billings ... Withdrawal from this agreement will be effective upon delivery of written notice of withdrawal by either party."
The engagement letter contained a provision calling for arbitration in the event of a disagreement over fees. That provision reads in its entirety:
In the event any disagreement arises between the firm and you as to any amounts owed for legal services performed or expenses incurred by the firm, both you and the firm agree that we will submit any such disputes to the Fee Arbitration Board of the Massachusetts Bar Association for resolution.
As described in greater detail below, Arcidi contends that the engagement letter was rescinded or modified into a contingent fee agreement about a year after it was executed.
From the time of its engagement until February 14, 2003, Todd & Weld provided legal services to Arcidi and the Marottas. Over the course of its representation of Arcidi and the Marottas, Todd & Weld billed for services provided, as well as for expenses incurred.
No written contact, other than the engagement letter, was ever entered into between Todd & Weld and Arcidi or the Marottas regarding this representation.
In his deposition, Arcidi testified that there was a meeting at Todd & Weld sometime in 2001, at which his dissatisfaction with the representation he and the Marottas were receiving and the continued representation by Todd & Weld was under consideration. Arcidi expressed his intention to terminate Todd & Weld because he claimed the firm was not representing them zealously enough. Arcidi claims that Attorney J. Owen Todd asked him to step outside the meeting room and told him: “I know you, relax, you’re on a contingency basis, don’t worry about the dough, and I’m going to get on it.”
In describing the “contingency,” Arcidi also testified in his deposition as follows.
We didn’t define contingency. We didn’t — I know contingency means if you win, you get paid. But, he was keeping — and he was billing me every month, so I made assumptions that I would — once we win, I would just pay him. You know, I was going to sell [the property that was subject to dispute], and give him the dough. That was it.
In other words, he [Mr. Todd] says, don’t pay me, if you don’t win, you don’t pay nothing. If we win, you just pay me the fees that I am billing you. That’s the contingency . . . My definition of contingency is what I just told you. That you get... paid only this, and all they have to do is pay expenses. That’s what a contingency is. Did he send me a letter, no. Did he sign it, no. His word was good enough for me ... The fact that he was billing me meant just this, when we win he gets his pay. If we don’t win, I’ll take care of his expenses ... When I say that I sent him $100,000, and it wasn’t for the outstanding bill, they sent it to him for expenses and to keep him quiet and keep going. If you notice, when did I send him the $100,000? I mean, let’s put things in the right order. Why did I — did I respond, yea, here’s 100 grand. But I still thought I was in a contingency. And I thought he had this list of expenses and costs.
*386 There was no discussion about reducing such an arrangement to writing, and the agreement was not reduced to writing.
Todd & Weld, because it disagrees that there was ever a modification to a contingent fee agreement, continued to send Arcidi bills.
On May 3, 2002, Mr. Todd wrote to Arcidi, informing him that the balance for “Caruso related matters” was $165,521.50 and that Todd & Weld would be forced to withdraw from representing Arcidi unless he immediately was paid $50,000 towards the outstanding bill.
On May 17, 2002, Mr. Todd again wrote Arcidi, asking Arcidi to follow through on a promise that he and Angie Marotta would both pay $50,000 towards the outstanding bill.
On or about May 28, 2002, Arcidi made payment to Todd & Weld in the amount of $100,000. Arcidi now claims that “this payment was for costs and expenses within the context of the contingent fee arrangement.”
On September 9, 2002, Attorney Howard M. Cooper of Todd & Weld wrote to Arcidi, informing him that Todd & Weld would withdraw as counsel if his account was not paid by the end of that week. Mr. Cooper pointed out that the balance had grown to $233,499. The payments were not made and are outstanding today.
The parties remain in disagreement as to whether there ever was a contingent fee agreement, or even an agreement to enter into such an agreement. There is, however, no disagreement that the engagement letter was the original agreement between Todd & Weld and Arcidi.
On March 6, 2003, Todd & Weld made an arbitration demand with the Fee Arbitration Board of the Massachusetts Bar Association. Through counsel, Arcidi has refused to participate in arbitration.
DISCUSSION
Summaiy judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Lindsay v. Romano, 427 Mass. 771, 773 (1998); Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
In assessing the motion before it, the Court first reflects upon the stated purpose of the Massachusetts Rules of Civil Procedure. The Rules are to “be construed to secure the just, speedy, and inexpensive determination of every action.” Rule 1. When applying the Rules, judges must exercise their powers to make them “instruments for the promotion of justice ... not the exaltation of mere technicalities.” Beaupre v. Cliff Smith & Associates, 50 Mass.App.Ct. 480, 484 n.8 (2000). This applies to Rule 56 as much as to all of the others.
A second concept that looms large in this case is the fact that what is at issue, among other things, is whether the underlying matter ought to be resolved by a judge or jury or by arbitration.
Arbitration is always a matter of contract, and a party cannot be required to submit any dispute to arbitration unless he has agreed to do so. Local Union No. 1710, Intern. Ass’n of Fire Fighters, AFL-CIO v. City of Chicopee, 430 Mass. 417, 421 (1999); Rae F. Gill, P.C. v. DiGiovanni, 34 Mass.App.Ct. 498, 501 (1993). Here, of course, there is a contract calling for arbitration — the engagement letter between Arcidi and Todd & Weld.
There is no question but that the engagement letter constitutes an agreement to submit the matter of a dispute over Todd & Weld’s attorneys fees to arbitration before the Fee Arbitration Board of the Massachusetts Bar Association.
“Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, ‘procedural’ questions which grow out of the dispute should be left to the arbitrator[s].” John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964). See also, Paine Webber, Inc. v. Elahi, 87 F.3d 589, 599-600 (1st Cir. 1996); Local 285, SEIU v. Nonotuk Resource Associates, Inc., 64 F.3d 735, 740 (1st Cir. 1995).
Courts have very limited roles to play in matters in arbitration. Basically, a judge may, at the beginning, determine whether the parties have agreed to arbitrate a particular matter and, at the end — subject to a very narrow scope — determine whether to set aside the arbitration award. However, once it is determined according to the parties’ agreement that a matter should be arbitrated, then questions relating to the interpretation of the agreement are for the arbitrator, not the Court. See Barnstead v. Ridder, 39 Mass.App.Ct. 934, 936 (1996). Similarly, the arbitration award may only be set aside if the arbitrator(s) exceeded the scope of their authority or decided the matter based on fraud, arbitrary conduct, or procedural irregularities in the hearing. See, e.g., Plymouth-Carver Regional School District v. J. Farmer & Co., Inc., 407 Mass. 1006, 1007 (1990).
Where a contract contains an arbitration clause, there is a presumption of arbitrability. Arbitration should not be denied unless it can be said with “positive assurance” that the particular arbitration clause cannot be construed to cover the dispute in issue. Dry wall Systems, Inc. v. ZVI Construction Co., 435 Mass. 664, 666-67 (2002). The only “positive assurance” here is just to the contrary — clearly the arbitration clause covers disputes over attorneys fees like that presented here.
*387 There is a strong public policy favoring arbitration, and Courts must be exceedingly cautious about interfering with the proceeding or its results. Bureau of Special Investigations v. Coalition of Public Safety, 430 Mass. 601, 603-04 (2000); Minton Const. Corp. v. Commonwealth, 397 Mass. 879, 880 (1986); Carpenter v. Pomerantz, 36 Mass.App.Ct. 627, 628 (1994).
Arcidi argues that the agreement contained in the engagement letter has been amended to change it to a contingent fee agreement or that there has been a novation to that effect. But
[t]he termination of a contract, whether by rescission according to its terms, by abandonment, by termination for justifiable cause, or otherwise, does not necessarily terminate a provision for arbitration or other agreed procedure for resolution of disputes. Such provisions should be construed as broadly as the parties intended.
Mendez v. Trustees of Boston University, 362 Mass. 353, 356 (1972). See also Carpenter v. Pomerantz, supra, 36 Mass.App.Ct. at 629-30.
This Court concludes that all of the issues raised by Arcidi relating to the engagement letter, at least as applied to disputes over fees, including those relating to any possible amendment to the agreement or an novation thereof, are for the Fee Arbitration Board to resolve, not for this Court as a means of prohibiting or controlling the arbitration process.
ORDER
For the foregoing reasons, the Plaintiffs’ Motion for Summary Judgment (Paper #12) is ALLOWED. Further, the Plaintiffs Motion to Stay Litigation Pending Arbitration (Paper #14) is also ALLOWED. As a result, any issues not arbitrable and raised in this litigation, including any discovery thereon, are STAYED pending completion of the arbitration before the Fee Arbitration Board of the Massachusetts Bar Association.