Brassard, Raymond J., J.
The plaintiffs, City of Boston School Committee, Thomas Payzant, and the Boston Public Schools (collectively, the “School Committee”), brought this action, pursuant to G.L.c. 150C, §11, requesting the court to vacate an arbitration award rendered in favor of the defendant, Boston Teachers Union (“Union”). The Union counterclaimed, seeking confirmation of the arbitrator’s award, pursuant to G.L.c. 150C, §10. Both parties then moved for summary judgment. After a hearing and careful consideration of the papers, the Union’s Motion for Summary Judgment is ALLOWED, and the School *16 Committee’s Motion for Summary Judgment is DENIED. However, the court emphasizes the reasonable limitations inherent in the award, as discussed below.
BACKGROUND
The material facts of the case are not in dispute. The School Committee and the Union have been parties to collective bargaining agreements (“CBA” or “Agreements”), including Agreements covering the periods September 1, 2000 through August 31, 2003 and September 1, 2003 through August 31, 2006.[2] Pursuant to these Agreements, the Union is the certified collective bargaining agent for all teachers employed by the School Committee.
Part of the Union’s responsibility as collective bargaining agent is to represent teachers throughout the various stages of the disciplinary process. In order for the Union to cany out this and other duties, the CBA provides for the exchange of information between the parties. Specifically, Article IX C.7 of the CBA provides that “[t]he [School] Committee will make available to the Union all information necessary for the Union to perform its function in collective bargaining, and contract administration and otherwise as collective bargaining agent.”
The instant dispute arose in November 2001, in the context of disciplinary proceedings involving a teacher, Ms. Brenda Handy (“Handy”), who was represented by the Union. During these proceedings, the School Committee refused to disclose the names of five student witnesses who made written statements concerning Handy’s alleged misconduct; namely, the slamming of a classroom door into a student’s arm. Although the School Committee turned over the statements themselves, it redacted all identifying information contained thereon. Over the Union’s objection, the redacted student witness statements were admitted into evidence at the disciplinary hearing, and considered by the hearing officer as evidence of Handy’s misconduct. Handy received a ten-day suspension for violating the Boston Public School’s corporal punishment policy. The suspension was upheld at arbitration, where the identities of the student witnesses were ultimately revealed.
In addition to grieving other aspects of the suspension,[3] the Union grieved the School Committee’s refusal to produce the unredacted student witness statements during the initial disciplinary proceedings. Unable to reach resolution at the lower levels of the grievance procedures, the dispute went to arbitration. Arbitrator Daly was assigned to the case, and he framed the issue as follows:
Did the School Committee . . . violate Article IX C.7 ... by withholding from the [Union] in the course of the disciplinary hearing process the names of students who claimed in written statements to be percipient witnesses to the incident for which Brenda Handy was ultimately disciplined following a disciplinary hearing conducted November 2, 2001 and at which the Committee placed the statements in evidence?
The essence of the Union’s argument at arbitration was three-fold. First, the Union asserted that “in order to effectively represent its members facing disciplinary hearings, the identity of all witnesses, including students, is necessary .. .” Without such information, the Union “had no opportunity to evaluate credibility or bias” of the witnesses. Next, the Union argued that it was entitled to the names of the student witnesses, “given the plain and unambiguous language contained in Article IX C.7.” Finally, the Union argued that there was “nothing in the relevant external law that either allows or requires the concealment of student names.”
In response to the Union’s claims, the School Committee argued that there was an “intrinsic ambiguily to the language [of Article IX C.7] which require[d] an inquiry as to what the practice had been in applying the contractual obligation to the [Union’s] requests for unredacted student statements at disciplinary hearings.” Next, the School Committee maintained that it had consistently withheld the names of student witnesses in the past, in accordance with a School Committee policy. Lastly, the School Committee pointed to federal and state laws protecting the confidentiality of student records, and more generally, the privacy rights of students, all of which the School Committee claimed would be violated if the arbitrator ruled in favor of the Union.
After considering the testimony and other evidence presented at the arbitration, the arbitrator rejected each of the School Committee’s arguments. He found that the evidence failed to establish a binding practice or an official School Committee policy in effect which would permit the School Committee to redact the names of student witnesses at an initial disciplinary hearing. Further, the arbitrator found that no external law automatically precluded the disclosure of students’ identities during disciplinary proceedings. Finally, in response to the School Committee’s concerns regarding student privacy, and retribution or retaliation, the arbitrator found that “nothing in Article IX C.7 or in the conduct of the parties has been shown to derogate from the [School Committee’s] right to decide to withhold certain information (including, presumably, a student witness’ identity) if [it] has legitimate and substantial concerns regarding . . . disclosure.”
Based on his findings, the arbitrator held that the School Committee “violated Article IX C.7 . . . when, absent the identification of specific and substantial concerns unique to the pending disciplinary hearing, it redacted the names of student witnesses from written statements provided to the Union in the course of the disciplinary hearing of Brenda Handy in November of 2001.” Notably, this decision will affect not only the proceedings against Handy, but will likely serve as precedent to establish the rights and obligations of the *17 Union and the School Committee at future disciplinary proceedings in which this issue arises.[4]
DISCUSSION
A.Standard of Review
Summary judgment is appropriate where there are no genuine issues as to any material fact, and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). As noted above, there are no material facts in dispute in this case. Therefore, the court must decide which party is entitled to judgment as a matter of law.
In order to prevail in this action, the School Committee must demonstrate that “the arbitrator! ] exceeded [his] powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law.” G.L.c. 150C, §11(a)(3). In light of this standard of review, the role of the court in reviewing the arbitrator’s award is limited. Bureau of Special Investigations v. Coalition of Public Safety, 430 Mass. 601, 603 (2000). “Absent fraud, errors of law or fact are not sufficient grounds to set aside an award.” Plymouth-Carver Regional School Dist. v. J. Farmer & Co., 407 Mass. 1006, 1007 (1990). “An arbitrator’s result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet it may not be subject to court interference.” City of Lynn v. Thompson, 435 Mass. 54, 62 (2001), quoting Delta Air Lines v. Air Line Pilots Ass’n International, 861 F.2d 665, 670 (11th Cir. 1988), cert. denied, 493 U.S. 871 (1989). Despite such limited review, an arbitration award may be vacated where it offends a “well defined and dominant public policy.” Massachusetts Highway Department v. American Federation of State, County and Municipal Employees, Council 93, 420 Mass. 13, 16 (1995).
The School Committee attacks the arbitration award on three grounds. First, it asserts that certain privacy statutes (e.g. 20 U.S.C. §1232g, G.L.c. 71, §34D, G.L.c. 214, §1B) prohibit disclosure of un-redacted student witness statements during teacher disciplinary proceedings, and that adherence to the arbitrator’s award would cause the School Committee to violate these statutes. Alternatively, the School Committee argues that even if adherence to the award were not found to constitute conduct prohibited by law, the arbitration award nonetheless offends a well defined and dominant public policy. Finally, the School Committee contends that the arbitration award interferes with its statutorily mandated, non-delega-ble managerial prerogatives, and thus, the arbitrator exceeded his authority in making the award. As discussed below, these arguments cannot prevail.
B.Family Educational Rights and Privacy Act
The Family Educational Rights and Privacy Act (“FERPA”) provides for the withholding of federal funds from educational institutions that have “a policy or practice of permitting the release of education records ... of students without written consent of their parents.” 20 U.S.C. §1232g. “Education records” are defined as “those records, files, documents, and other materials which (i) contain information directly related to a student and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution.” 20 U.S.C. §1232g(a)(4)(A). The School Committee asserts that unredacted student witness statements are “education records,” and as such, they cannot be lawfully disclosed during teacher disciplinary proceedings. Assuming arguendo that disclosure of unredacted student witness statements, in preparation for teacher disciplinary proceedings, constitutes a “policy or practice of permitting the release” of such records, the School Committee’s argument still fails because such statements are not “education records.”
Although the First Circuit has not answered or addressed the question of whether unredacted student witness statements are “education records,” other federal courts have answered the question in the negative. See e.g., Wallace v. Cranbrook Educational Community, 2006 U.S. Dist. LEXIS 71251 (E.D. Mich. 2006) (holding that unredacted student witness statements concerning a maintenance employee’s alleged inappropriate sexual behavior toward students were not “education records” under FERPA, and thus, were the proper subject of discovery in the employee’s wrongful termination lawsuit);[5] Ellis v. Cleveland Municipal School District 309 F.Sup.2d 1019, 1022 (N.D. Ohio 2004) (holding that while the records at issue clearly involved students as alleged victims and witnesses, the records were directly related to the activities and behaviors of teachers, and therefore, were not “education records” governed by FERPA).
Another federal court has held that FERPA is intended to protect “records relating to individual student academic performance, financial aid or scholastic probation” and not criminal investigation or incident reports. Bauer v. Kincaid, 759 F.Sup. 575, 591 (W.D.Mo. 1991). Moreover, the Fifth Circuit has held that, “(e]xcluded from FERPA’s protections are records relating to an individual who is employed by an educational agency or institution.” Klein Independent School District v. Mattox, 830 F.2d 576, 579 (5th Cir. 1987).
This court concludes, in agreement with the Wallace court, that student witness statements are not “education records” under FERPA. Therefore, disclosure of the unredacted statements does not violate federal law and cannot support the School Committee’s action for vacating the arbitration award.
C.G.L.c. 71, §34D
Much like FERPA, Massachusetts has enacted legislation and regulations protecting “student records.” See G.L.c. 71, §34D and 603 C.M.R. §23.01 et seq. “Student records” consist of “the transcript and the *18 temporary record, including all information . . . concerning a student that is organized on the basis of the student’s name or in such a way that the student may be individually identified, and that is kept by the public schools of the Commonwealth.” 603 C.M.R. §23.02. The “transcript” consists of “administrative records that constitute the minimum data necessary to reflect the student’s educational progress and to operate the educational system.” Id. The “temporary record” includes “all the information in the student record, which is not contained in the transcript,” including “standardized test results . . . extracurricular activities, and evaluations by teachers, counselors, and other school staff.” Id.
The School Committee asserts that unredacted student witness statements are “student records,” disclosure of which is prohibited by Massachusetts law. However, the records at issue do not appear to be part of the “transcript” or the “temporary record” of any student, nor are they “organized on the basis of the student’s name or in such a way that the student may be individually identified.” 603 C.M.R. 23.02. Rather, the statements are organized on the basis of the teacher’s name. As such, students are not individually identifiable, based on the organization of the records.
Given the express language of the regulation, and the absence of any case law concluding otherwise, the court finds that unredacted student witness statements, organized not by student name, but by teacher name, do not fall within the definition of “student records.” Therefore, disclosure of unredacted student statements during disciplinary proceedings does not violate Massachusetts education law and cannot provide a valid basis for vacating the arbitration award.
D. G.L.c. 214, §1B
General Laws c. 214, §1B, protects an individual’s “right against unreasonable, substantial or serious interference with his privacy.” Section §1B “proscribe^] the required disclosure of facts about an individual that are of a highly personal or intimate nature when there exists no legitimate, countervailing interest.” Bratt v. International Business Machines Corp., 392 Mass. 508, 518 (1984). The School Committee argues that even if disclosure of unredacted student witness statements does not violate privacy laws protecting educational records, it violates the general privacy rights of students. The court disagrees for the following reasons.
First, the witness statements at issue were made by a number of percipient witnesses to alleged teacher misconduct, which occurred in a classroom full of students. Thus, the statements do not disclose facts that are of a highly personal or intimate nature. In addition, there is no evidence that the statements were compelled; rather, they appear to have been voluntarily given for the precise reason of bringing the teacher’s conduct to light. Therefore, the court finds that disclosure of unredacted student witness statements does not constitute an unreasonable, substantial, or serious interference with students’ privacy.
Even assuming a student does have a privacy interest in keeping his identity anonymous, the School Committee is required to balance that interest with its interest in giving the accused teacher the due process he or she is owed during a disciplinary proceeding. In In the Matter of a Subpoena, the Supreme Judicial Court stated that the law “allows privacy interests to defeat a request for discovery when the relevance of the information sought is marginal, attenuated, remote, or slight. It does not support the proposition that privacy interests should trump a discovery request for highly relevant information.” 436 Mass. 784, 795 (2002) (internal quotation omitted). The identity of one’s accusers is “highly relevant” to a teacher’s preparation with respect to disciplinary proceedings that could have a detrimental effect on her career.[6]
Finally, the School Committee is, by no means, obligated to disclose student names in all situations. The arbitration award expressly acknowledges the School Committee’s “right to decide to withhold certain information (including, presumably, a student witness’ identity) if [it] has legitimate and substantial concerns regarding . . . disclosure.” Thus, in sensitive situations where the victim has reported an incident which is of a highly personal or intimate nature, the School Committee is free to raise its concerns on a case-by-case basis, and to withhold a student’s identity where appropriate. As there is no absolute obligation to disclose witness identities in sensitive situations, the court finds that compliance with the arbitration award does not require the School Committee to violate the privacy statute.
E. Public Policy
Absent a finding that the arbitration award would cause it to violate the law, the School Committee alternatively argues that there is a strong public policy offended by disclosure of unredacted student witness statements during disciplinary proceedings. Specifically, the School Committee claims that the arbitrator’s decision violates the public policy of protecting a student’s rights to privacy and safety.
To obtain relief from an arbitration award on public policy grounds, the policy “must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.” Massachusetts Highway Department, 420 Mass. at 16, quoting W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers, 461 U.S. 757, 766 (1983). However, “(i]f an award is permissible, even if not optimal for the furtherance of public policy goals, it must be upheld.” Massachusetts Highway Department, 420 Mass. at 19.
Having determined that compliance with the arbitration award does not violate the federal and state student privacy laws, or the more general state privacy *19 statute, the court finds that the award does not offend any policy inherent in those laws. Thus, the School Committee is left relying on G.L.c. 119, §§51A and E, G.L.c. 71, §37G, and G.L.c. 269, §§17-19 to support its public policy argument.
General Laws c. 119, §§51A and 51E require that confidential written reports be made to the Department of Social Services by educational administrators, in cases where there is a substantial risk of harm to a child’s health or welfare. The School Committee argues that this statute sets forth a policy that incident reports describing harm to a child’s health or welfare must be kept confidential. Assuming there is such a policy, the court does not find that the policy is so broad as to encompass the unredacted student witness statements at issue.
First, the statements were made by students, not administrators, as contemplated by §51A. Next, the witness reports were intended to document teacher misconduct, not the abuse of children. In fact, they were created for the express purpose of determining whether such misconduct occurred, and imposing teacher discipline where necessary. Such a use is not consistent with the statutorily-mandated, confidential reporting of child abuse.
Again, the School Committee ignores the fact that, in the event that a witness report raises legitimate and substantial concerns about child abuse, the arbitration award does not mandate disclosure. Indeed, there may be situations where teacher misconduct constitutes the type of child abuse for which the mandatory reporting obligation is triggered. In these situations, the School Committee has discretion to object and withhold the identities of any student victims, consistent with the arbitration award. Thus, any policies in G.L.c. 119, §§51A and E are not offended by the arbitrator’s award.
The School Committee next argues that the policy respecting the safety of children is offended by the arbitrator’s award. The court acknowledges the policy inherent in statutes prohibiting corporal punishment, G.L.c. 71, §37G, and prohibiting hazing, G.L.c. 269, §§17-19. However, the arbitrator’s award does not offend these policies. To the extent that the School Committee has real concerns that disclosure could result in retaliation or other harm to a student, its right to object to disclosure and withhold a student’s name is preserved. Thus, the court finds that the arbitration award does not offend the public policy protecting the safety of students.
F. Managerial Prerogative
Lastly, the School Committee argues that the arbitrator exceeded his authority by issuing an award that interferes with its non-delegable, statutory powers. General Laws c. 71, §37 mandates that the School Committee “establish educational goals and policies ... consistent with the requirements of law and statewide goals and standards established by the board of education.” Despite this mandate, the court finds that the arbitration award does not interfere with any non-delegable management prerogative vested in the School Committee, and therefore, the arbitrator did not exceed his authority in issuing the award. See School Committee of Boston v. Boston Teachers Union, Local 66, 378 Mass. 65, 66 (1979) (confirming arbitration award and holding that although the school committee was not free to bargain away certain matters of educational management, there was no such matter imperiled by enforcement of the arbitration award).
Notably, the arbitrator in this case found that there was no policy or practice in place, by which the School Committee previously withheld student names from witness statements. Thus, the arbitrator’s award did not interfere with any existing educational policy established by the School Committee concerning student witness statements. Moreover, the court finds no Massachusetts cases suggesting that the withholding of names from student witness statements would constitute an educational policy within the School Committee’s exclusive managerial prerogative, even if there was such a policy in existence.
Given the express language in the CBA, and the absence of any authority supporting the School Committee’s asserted management prerogative, the arbitrator did not exceed his authority in finding that the School Committee violated Article IX C.7 of the CBA in refusing to turn over unredacted student witness statements during Handy’s disciplinaiy proceedings. The court certainly acknowledges the School Committee’s right to establish educational policies respecting the privacy and safely of students. However, as discussed above, refusing to disclose un-redacted student witness statements, in the absence of legitimate and substantial concerns regarding disclosure, is not a legitimate exercise of the School Committee’s managerial prerogative.
G. Conclusion
The School Committee has failed to demonstrate that the arbitrator rendered an award, which will cause it to violate the law; nor has it shown that the award offends a “well defined and dominant public policy” protecting the safety and privacy of students. Further, the School Committee has failed to demonstrate that its alleged policy of withholding student names from student witness statements is an exclusive management prerogative, immune from arbitration. Therefore, the arbitration award must be confirmed. The court, however, notes that the award cannot be read to grant the Union unfettered discretion to approach child witnesses in investigating allegations of teacher misconduct. Consistent with principles of common decency, the Union would be wise to approach a child witness after receiving permission from that child’s parent or guardian.
*20 ORDER
For these reasons, the arbitration award is hereby confirmed. The School Committee’s Motion for Summary Judgment is DENIED, and the Union’s Motion for Summaiy Judgment is ALLOWED.

The summary judgment record does not reflect any material differences in the relevant provisions of these Agreements.

These other grievances are not being pursued in this action.

At oral argument, when the court inquired whether this issue might be more appropriately resolved at the collective bargaining table, the School Committee pointed out that, in light of the arbitrator’s decision, the Union would have no motivation to bargain on an issue which has already been resolved in its favor.

Although the School Committee asserts that there is a distinction between revealing student identities at arbitration, and revealing them at the disciplinary stage, the court finds any distinction to be immaterial. If the statements are not educational records, FERPA is not implicated, regardless of when the statements are disclosed.

The School Committee conceded that discipline, up to and including termination, can occur as a result of disciplinary hearings. An aggrieved teacher may not reach arbitration, and thus learn the identity of her accusers, until months after such disciplinary action is taken. At that point, the damage to her career may be irreparable.