## City of Boston *vs.* Boston Police Patrolmen's Association.

No. 08-P-1114.

Suffolk. March 12, 2009. - June 5, 2009.

Present: Green, Brown, & Wolohojian, JJ.

*Arbitration,* Police, Collective bargaining, Authority of arbitrator. *Public Policy. Public Employment,* Police, Collective bargaining, Termination. *Municipal Corporations,* Police.

A Superior Court judge correctly vacated an arbitration award reducing a police officer's termination to a six-month suspension and ordering reinstatement with back pay and benefits, where the arbitrator's award conflicted with public policy, in that the police officer engaged in felonious conduct, and the fact that he was not convicted of the contemporaneous charge was not determinative. [380-382]

Civil action commenced in the Superior Court Department on May 4, 2007.

The case was heard by *Thomas E. Connolly,* J.

*John M. Becker* for the defendant.

*Nicole I. Taub* for the plaintiff.

Brown, J. This appeal by the Boston Police Patrolmen's Association (union) challenges a judgment of the Superior Court that vacated an arbitration award to Officer Noel Docanto of the Boston police department. We affirm the judgment.

The Superior Court judge's decision focused on the following findings of the arbitrator. On the night of December 20, 2003, Docanto, his girlfriend, his younger brother, and a friend of the brother went out in Docanto's car. After parking in the Prudential Center garage, they went to a nightclub. They returned to the car with another of Docanto's brothers and two of that brother's friends around 2:00 A.M.. Docanto's younger brother was driving the car when the following events transpired.

Docanto's car approached a closed cashier's lane at the garage exit, then backed up and attempted to cut in front of a red car in an adjacent lane. After an exchange of words between the occupants of the two cars, the driver of the red car, Michael Faysal, and the occupants of Docanto's car left their respective vehicles. The initial verbal confrontation suddenly escalated into a physical altercation when Faysal took a boxing stance, apparently provoking Docanto's companions. As Faysal was outnumbered, he suffered numerous blows from his assailants. Security guards eventually called police, but Docanto and his group had left before they arrived. Before Docanto's group left, Docanto folded up the license plate of his car, in an attempt to conceal the identity of the car's owner.[1]

In 2004, Docanto was charged with assault by means of a dangerous weapon (shod foot) in Boston Municipal Court. He admitted to sufficient facts on February 25, 2005, and the case was continued without a finding for one year. On October 5, 2004, the Boston police department brought internal administrative charges against Docanto relating to the same incident; Docanto was terminated on March 3, 2005, because the administrative charges had been sustained.

The union grieved the termination decision pursuant to the provisions of its collective bargaining agreement with the city. The arbitrator concluded that Docanto's conduct in the Prudential Center garage was "offensive, way out-of-line and worthy of substantial discipline." The arbitrator reduced the termination to a six-month suspension and ordered reinstatement with back pay and benefits. The city appealed pursuant to G. L. c. 150C, § 11(a)(3), inserted by St. 1959, c. 546, § 1, which explicitly states that the Superior Court "shall" vacate an arbitration award where "the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law."

A reviewing court usually accords great weight to the parties' election, particularly from collective bargaining agreements, to submit a dispute to arbitration. See *Boston* v. *Boston Police Patrolmen's Assn.*, 443 Mass. 813, 818 (2005) (*Boston*), and

---

[1]Both the arbitrator and the Superior Court judge highlighted this fact as an aggravating factor in evaluating Docanto's conduct.

cases cited. General Laws c. 150C § 11, enumerates narrow grounds upon which a court may vacate an arbitration award. The Supreme Judicial Court mandates the following three-part de novo analysis to ascertain whether the order to vacate the arbitration award adheres to § 11(*a*)(3) requirements. See *Boston, supra* at 818-819. "First, the public policy must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Sheriff of Suffolk County* v. *Jail Officers & Employees of Suffolk County,* 68 Mass. App. Ct. 903, 904 (2007), *S.C.,* 451 Mass. 698 (2008) (quotations omitted). Second, the conduct involved cannot be "disfavored conduct, in the abstract." *Massachusetts Hy. Dept.* v. *American Fedn. of State, County & Mun. Employees, Council 93,* 420 Mass 13, 17 (1995) (quotations omitted). Third, "the arbitrator's award reinstating the employee [must violate] public policy to such an extent that the employee's conduct would have required dismissal. Merely showing that the conduct is disfavored by public policy is not sufficient." *Bureau of Special Investigations* v. *Coalition of Pub. Safety,* 430 Mass. 601, 605 (2000) (quotations and citation omitted).

The question of public policy is ultimately one for resolution by courts, not arbitrators. See *id.* at 603; *Boston, supra* at 818; *Sheriff of Suffolk County* v. *Jail Officers & Employees of Suffolk County,* 451 Mass. 698, 700 (2008). That said, given the "strong public policy favoring arbitration . . . the judiciary must be cautious about overruling an arbitration award on the ground that it conflicts with public policy." *Bureau of Special Investigations* v. *Coalition of Pub. Safety, supra* at 603-604 (quotations omitted).

The union concedes that the instant case presents facts that meet the first two parts of the aforementioned test. Its principal argument seems to hinge on whether Docanto's conduct was such that would have required termination, as he neither pleaded guilty to, nor was convicted of, the contemporaneous criminal charge. But cf. *Hopkins* v. *Medeiros,* 48 Mass. App. Ct. 600, 613 (2000). This argument is off the mark.

"For an arbitration award to violate public policy, it need not violate the letter of a statute"; rather, felonious misconduct sufficiently meets the standard. *Boston,* 443 Mass. at 820. See

*Bureau of Special Investigations* v. *Coalition of Pub. Safety*, *supra* at 604-605. "The Legislature has forbidden persons found to have engaged in such [felonious] conduct from becoming police officers and, by implication, from remaining police officers." *Boston, supra* at 821. The union's lawyer conceded at oral argument that Docanto's termination would have been required had he been convicted of assault by means of a dangerous weapon. The fact that the charge did not result in a conviction does not alter the equation. "It is the felonious misconduct, not a conviction of it, that is determinative." *Id.* at 820.

We recognize that the nature of the felonious conduct in the present case may be viewed in some respects as less egregious than that involved in *Boston*. However, the critical factor is that the conduct was felonious — not the degree or nature of the felony. As stated in *Boston, supra* at 821, and as the union itself acknowledges, persons who have engaged in felonious conduct may not be police officers. Moreover, for us to engage in a particularized evaluation of the relative seriousness of the felonious conduct involved in one case as compared to another would derogate from the value of clarity and predictability in applying the narrow public policy exception to the general rule favoring finality of arbitration.

Based on the foregoing, we affirm the Superior Court's judgment vacating the arbitration award.

*So ordered.*