SUPERIOR COURT 
 
 TOWN OF PLYMPTON v. PLYMPTON POLICE ASSOCIATION MASSCOP LOCAL 276

 
 Docket:
 2384CV01982-C
 
 
 Dates:
 June 7, 2024
 
 
 Present:
 Robert B. Gordon
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS
 
 

 BACKGROUND
            This case comes to the Court following a labor arbitration award issued in favor of a public sector union representing police officers (the"Plympton Police Association" or the "Union") employed by the Town of Plympton (the "Town"). The arbitral decision arises out of a grievance filed by the Union, which alleged that the Town breached the parties' collective bargaining agreement ("CBA" or the "contract") when it terminated the employment of Jeffrey Maligno ("Maligno" or the "Grievant") for purported violations of police department sexual harassment policy.
            Following a two-day evidentiary hearing, the duly appointed arbitrator (Loconto, M., hereinafter the "Arbitrator") issued a 32-page Opinion and Award. In his decision, the Arbitrator
found that the Grievant had not violated the Town's sexual harassment policy, but had engaged in conduct unbecoming an officer. More specifically, the Arbitrator determined that Maligno
 
                                                            -1-
 
had, on one occasion, shared unsubstantiated gossip about the private lives and relationship of two colleagues. In so doing, the Grievant perpetuated sexual rumors that were harmful to these colleagues, and thereby impaired the cohesion and effectiveness of the police department as a whole.
            Nevertheless, after reviewing with care the overall circumstances surrounding the Grievant's actions, the Arbitrator found that Maligno had not committed misconduct of sufficient gravity to warrant his discharge from employment. Central to the Arbitrator's reasoning and result were his factual findings that Maligno had served as a Town police officer for five years without discipline; had not personally originated the rumors in issue; was not shown to have used the explicitly sexual vocabulary the employer's investigator had attributed to him; had repeated the gossip about his co-workers in the context of a loose departmental culture in which rumors about these two employees had already been circulating widely for more than a year; and had admitted his error and displayed a sincere commitment to make amends with his colleagues. Dismissal thus deemed too severe a penalty for the offense, the Arbitrator reduced Maligno's discipline to a 10-day suspension from work and ordered him reinstated to active duty with back pay.
            Presented for decision in this follow-on litigation are Cross-Motions for Judgment on the Pleadings. By its motion, the Union seeks confirmation of the Arbitrator's award pursuant to
G.L. c. ISOC, § 10. By its cross-motion, the Town seeks to vacate the arbitral award in accordance with G.L. c. 150C, § 11(a)(3), arguing that reinstatement of the Grievant to police officer employment offends public policy.
 
                                                            -2-
 
DISCUSSION
I. STANDARD OF REVIEW
            The CBA between the Town and the Union, like most of its kind, contains a grievance procedure that culminates in a final resolution of disputes by binding arbitration. The Legislature has indorsed, and the Court must respect, a strong public policy favoring arbitration. Sec School Comm. of Pittsfield v. United Educators of Pittsfield, 438 Mass. 753, 758 (2003) ("Public policy in the Commonwealth strongly encourages arbitration."). The Legislature has codified this priority, permitting courts to vacate arbitration awards only in rare, statutorily enumerated circumstances. See G.L. c. 150C, § 11.
            "The system of collective bargaining created and indorsed by the Legislature necessitates deference to the bargained-for result of an arbitrator's award."  Pittsfield v. Local 447 Int'l  Bthd. of Police Officers, 480 Mass. 634, 637 (2018). As the SJC has made clear time and again:
"We ... uphold an arbitrator's decision even when it is wrong on the facts or the law, and whether it is wise or foolish, clear or ambiguous. Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Where the arbitrator allegedly engaged in improvident, even silly, factfinding, we are nonetheless bound by those facts. An award cannot be disturbed even if an arbitrator's findings arc so confusing or unclear that, in order to evaluate the merits of an award, we would have to confront conflicting inferences."
Id. at 638 (citations and quotations omitted). Accord Boston v. Boston Police Patrolmen's Ass'n, 443 Mass. 813, 818 (2005) ("strong public policy favoring arbitration" compels affirmation of award except in the most compelling circumstances).
 
                                                            -3-
 
II. THE PUBLIC POLICY EXCEPTION
            Bound by the facts explicitly found by the Arbitrator and deferential to his application of the CBA's terms thereto, the Court may in narrow circumstances set aside an arbitral award determined to violate public policy. "We apply a stringent, three-part analysis to determine whether the public policy exception applies to the otherwise mandated enforcement of an
arbitration award." Pittsfield, 480 Mass. at 639 (citation and quotation omitted). The SJC has expounded the rigors of the public policy test as follows:
"First, ... to be vindicated, [the] public policy must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. Second, ... the conduct involved cannot be disfavored conduct in the abstract. Rather, to implicate public policy, an arbitrator's award must order re- instatement after an employee has engaged in disfavored conduct which is integral to the performance of employment duties. Finally, we require[] a showing that the arbitrator's award reinstating the employee violates public policy to such an extent that the employee's conduct would have required dismissal. Merely showing that the conduct is 'disfavored' by public policy is not sufficient."
Bureau of Special Investigations v. Coalition of Pub. Safety. 430 Mass. 601, 604-05 (2000) (citations and quotations omitted). Accord Pittsfield, 480 Mass. at 639-40 (same).
III. TOWN'S CHALLENGE TO ARBITRAL AWARD
            In the case at bar, the Town seeks to overturn the Arbitrator's decision to reinstate Maligno to active police employment on the ground that such an order violates public policy. The gravamen of the Town's position is the contention that Maligno breached a departmental
 
                                                            -4-
 
rule against sexual harassment, and that his reinstatement to active duty on a police force whose cohesion he thereby disrupted offends public  policy. The Court does not agree. Indeed, the Town' s challenge founders on the fact that the Arbitrator' s reinstatement of Maligno meets none of the requisites of the public policy exception' s three-part test.
            First, although the Court acknowledges that Massachusetts law embodies a well-defined and important policy against sexual harassment, the Arbitrator in this case explicitly found that Maligno had not violated such a policy. Indeed, this was the very foundation of his ruling that the Grievant's dismissal could not stand. It is well settled that a court may not apply the public policy override in a case where - as here - the arbitrator found as fact that the reinstated employee had not violated the underlying public policy. See, e.g. . Pittsfield, 480 Mass. at 641-42 ("Obligated to credit the arbitrator's conclusion that a phrase in [the grievant's] report was no more than misleading and that termination was not permissible under the collective bargaining agreement, we must uphold the award"; rejecting challenge to arbitral reinstatement purporting to violate public policy against egregious dishonesty by police officer, because arbitrator's findings did not show grievant to have engaged in such extreme dishonesty); O' Brien v. New England Police Benevolent Ass'n Local 911, 83 Mass. App. Ct. 376, 382-83 (2013) (arbitral reinstatement of police officer determined not to have made false arrest or to have used excessive force could not be vacated on public policy grounds: "Here, the factual and legal underpinnings necessary to application of the public policy exception are lacking. The arbitrator did not issue an award of reinstatement that flies in the face of factual findings of misconduct; there is no inconsistency between the findings of the arbitrator and his award of reinstatement.").
            Second, the public policy exception requires that the Grievant's offending conduct have been more than merely " disfavored in the abstract." It must have instead been "integral to the
 
                                                            -5-
 
performance of [his] employment duties." Bureau of Special Investigations, 430 Mass. at 605. Here, Maligno's misconduct as found by the Arbitrator consisted of spreading a piece of gossip about a pair of police colleagues in a single conversation with a fellow department member, behavior the Arbitrator determined to be "conduct unbecoming an officer." Although the Arbitrator thus found that Maligno' s behavior was deserving of some modest measure of discipline, his decision makes clear that the isolated sharing of a salacious rumor was much closer to "disfavored conduct in the abstract" than to anything resembling serious sexual harassment. More to the point, Maligno's misdeed was plainly incidental rather than integral to the performance of any of his core responsibilities as a police officer. See Massachusetts Highway Dep't v. American Fed. of State, Cnty and Mun. Employees, Council 93,420 Mass. 13, 17, 19 (1995) ("Arbitration awards reinstating discharged employees arc [] not upheld if the public policy relates to the worker's employment and the offense goes to the heart of the  worker's responsibilities . . .[Conversely,] arbitration awards reinstating employees are upheld if the employees' conduct, even though harmful, was not related to their job activities and did not pose a special risk to the public due to their job."). Inasmuch as Maligno's offending conduct (viz., the spreading of an unsubstantiated rumor about two departmental colleagues) did not go to the heart of his official job responsibilities as a police officer, and the recurrence of which would not pose special risks to the public, the second requirement of the public policy exception is not satisfied. This represents an independently fatal deficit to the Town's legal challenge.
            Finally, and most saliently, the Town has not demonstrated that Maligno's misconduct was so serious as to have mandated dismissal under the CBA. The reinstatement of an employee found to have committed such misconduct would, of course, violate public policy. See Pittsfield, 480 Mass. at 640; Bureau of Special Investigations, 430 Mass. at 605. In the present case,
 
                                                            -6-
 
however, and to the precise contrary, the Arbitrator expressly found that Maligno's "conduct unbecoming an officer" did not require dismissal under the ''just cause" provision of the CBA. A ten-day suspension without pay was, instead, found to be fully sufficient sanction for an offense of this level. In these circumstances, the law is clear that the public policy exception cannot be invoked to override the Arbitrator's disciplinary determination.
            Authorities reflecting this principle abound, but two of the SJC's better-known cases make the point quite clearly. In Bureau of Special Investigations, the arbitrator found that the grievants had committed violations of law and agency policy by accessing confidential tax records without proper authorization. 430 Mass. at 602. Nevertheless, the arbitrator determined that the collective bargaining agreement did not dictate dismissal as the sole disciplinary penalty for this offense, and instead imposed a three-month suspension for their misconduct. Id. Rejecting the ensuing public policy challenge to the grievants' reinstatement, the SJC wrote:
"Although [the grievants] violated public policies embodied in statutes protecting confidential tax information, the collective bargaining agreement did not require dismissal. While [the grievants' ] conduct would have provided sufficient grounds for an arbitrator to find just cause for discharge, we recognize that the parties bargained for the arbitrator's interpretation of the contract and that even our strong disagreement with the result docs not provide sufficient grounds for vacating the arbitrator's award.
[The parties] negotiated a collective bargaining agreement in which they gave the arbitrator final authority to sanction employees who commit misconduct such as that committed by [the grievants].... The arbitrator's award specified a three-month suspension without pay. The arbitrator, as final judge of the proper means of discipline, concluded  that this . . . was sufficient disciplinary action.
            We see no reason to overturn the arbitrator's
                                                            -7-
 
award as [the employer] requests".
Id. at 606 (citations omitted). Accord Pittsfield, 480 Mass. at 611 (rejecting public policy challenge to arbitral reinstatement:"Here, the arbitrator's findings about [the grievant's] misconduct do not describe conduct that rises to the level of misconduct that necessitated termination of the officer We cannot, in these circumstances, substitute our judgment for that of the arbitrator in determining the appropriate discipline."). The arbitral reinstatement of Maligno in this case thus docs not satisfy the third prong of the public policy exception, and cannot be vacated for this reason alone.[1]
CONCLUSION AND ORDER
            For all the foregoing reasons, and in accordance with the authorities cited hereinabove, the Town's public policy challenge to the arbitral reinstatement of Maligno is without merit. The Plympton Police Association's Motion for Judgment on the Pleadings, therefore, is ALLOWED, the Town of Plympton's Motion for Judgment on the Pleadings is DENIED, and the award of the Arbitrator reinstating Jeffrey Maligno to active duty is AFFIRMED.
SO ORDERED.
/s/Robert B. Gordon
Justice of the Superior Court
June 7, 2024
 
--------------------------------------------
 
[1] The Court emphasizes that the public policy exception to arbitral affirmation under G.L. c. 150C posits a three-part test that is conjunctive in its requirements. Failure to satisfy even one of these three requirements will foreclose application of the override. See,£:16 Bureau of Special Investigations, 430 Mass. at 605. Here, and as set forth ante, the Town's public policy challenge fails all three prongs of the test