CITY OF BOSTON *vs.* BOSTON POLICE PATROLMEN'S ASSOCIATION. No. 03-P-164. March 31, 2004. *Arbitration,* Collective bargaining, Police. *Public Policy. Public Employment,* Police, Collective bargaining, Termination. Further appellate review granted, 442 Mass. 1103 (2004).

After a routine traffic inquiry escalated into a full-blown conflict, Boston police Officer John DiSciullo arrested two people and charged them with disturbing the peace, assault and battery on a police officer, and resisting arrest. The district attorney's office quickly filed a nolle prosequi on all charges on the ground that there was no "competent or credible evidence" to support them. An internal affairs investigation into DiSciullo's conduct resulted in sixteen departmental charges against him.[1] A departmental hearing produced a finding that he was guilty of all charges, and his employer, the city of Boston (city), fired him. The Boston Police Patrolmen's Association (union) grieved the discharge, claiming that it was contrary to the collective bargaining agreement and to the department's past practices. After a hearing, an arbitrator found that the city could not prove several charges,[2] but had proved that DiSciullo, among other things, had knowingly filed a false departmental incident report and, to protect himself from civil liability, had knowingly filed false criminal charges

---

[1]The charges consisted of five counts of conduct unbecoming an officer (two instances of assault and battery, two instances of threats, and one instance of filing a false report in violation of G. L. c. 268, § 6A); five counts of failing to conform his conduct to the requirements of law (two instances of assault and battery, two instances of threats, and one instance of filing a false report in violation of G. L. c. 268, § 6A); three counts of abuse of process (one instance of manufacturing, falsifying, and withholding evidence, and two instances of making false accusations); one count of failing to follow appropriate directives and orders; one count of failing to behave in a civil, respectful, and courteous manner toward members of the public; and one count of filing untruthful departmental reports.

[2]The arbitrator found that the city did not prove the assault and battery charges, two of the threat charges, or the charge of failing to follow appropriate directives and orders.

against the two people he arrested. Nevertheless, the arbitrator reduced DiSciullo's discharge to a one-year suspension without pay. The award was confirmed, over the city's objection, by a judge of the Superior Court, and the city has appealed. We affirm.

The city does not suggest that the union's grievance was not a proper subject for arbitration nor does it argue that the penalty the city imposed was immune from the arbitrator's scrutiny. See generally *Boston Police Patrolmen's Assn.* v. *Boston, ante* 672, 674-677 (2004). Instead, the city urges that the reinstatement award was against public policy.

The policy underlying enforcement of arbitration awards, generally and in the area of labor relations, is very strong. See *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990). However, "[a]rbitration . . . may not 'award relief of a nature which offends public policy.' " *Lawrence* v. *Falzarano*, 380 Mass. 18, 28 (1980), quoting from S.E. Eager, The Arbitration Contract and Proceedings § 121.6 (1971). In *Bureau of Special Investigations* v. *Coalition of Pub. Safety*, 430 Mass. 601 (2000), the Supreme Judicial Court held that three ingredients were essential to a proper finding that an award was contrary to public policy. *Id.* at 604-605. There is no serious disagreement between the city and the union that two of those ingredients are present in this case, i.e., that the public policy "must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests' " and that the conduct at issue cannot simply be "disfavored conduct, in the abstract, . . . [but must instead be] disfavored conduct which is integral to the performance of employment duties" (emphasis omitted). *Ibid.*, quoting from *Massachusetts Hy. Dept.* v. *American Fedn. of State, County and Mun. Employees, Council 93*, 420 Mass. 13, 16-17 (1995).

The third ingredient is that the behavior at issue "violates public policy to such an extent that the employee's conduct would have required dismissal." *Id.* at 605. As to the presence of that ingredient, the union and city take opposing positions. Understandably, the city points to the egregious nature of DiScuillo's misconduct and the likelihood that the false statements he made in various contexts will provide powerfully impeaching evidence potentially reducing his utility to the police force in future prosecutions. For its part, the union points to the arbitrator's discussion of examples of comparably bad behavior by other Boston police officers that did not result in a discharge, to the absence of any statute, rule, or regulation specifically stating that the conduct in which DiSciullo engaged requires discharge from the force, and to DiSciullo's ten years of service without involvement in a comparable incident.

Although DiSciullo's behavior was outrageous, we are constrained by prior decisions to affirm the arbitrator's award. To be sure, the Supreme Judicial Court's most recent opinion on the subject, *School Dist. of Beverly* v. *Geller*, 435 Mass. 223 (2001), contained no majority opinion for the court's decision to overturn an arbitration award that reinstated a teacher who had pushed and shoved students while they were in his charge at school. The court's analysis was based chiefly on its interpretation of the Education Reform Act, G. L. c. 71, § 42, not on a collective bargaining agreement. Three of the justices thought that the statute required dismissal for the conduct in which Geller had engaged. *Id.* at 231-233. Three dissenters found no such requirement in § 42 or in any other statute and, in addition, thought that public policy sufficient to overturn an arbitration award could not exist apart from a statute or regulation

requiring dismissal. *Id.* at 248. The seventh justice, joined by one of the three who believed that § 42 required dismissal, concluded that reinstatement of a teacher who had engaged in conduct harmful to students in his care violated public policy. *Id.* at 238-239.

In three cases that sequentially preceded *Geller,* though, the court concluded that public policy was not violated by an arbitration award reinstating terminated employees. The first involved an individual found to have had a pistol with obliterated serial numbers in his workplace toolbox, conduct that implicated two of the Commonwealth's gun laws, G. L. c. 269, §§ 10 & 11C, and violated his employer's written policy sensibly prohibiting guns at work. *Massachusetts Hy. Dept.* v. *American Fedn. of State County & Mun. Employees, Council 93,* 420 Mass. at 20-21. The second case involved two fraud investigators who had satisfied their curiosity about the income of their supervisors and various Boston sports figures by reviewing tax returns they had the power to access in connection with their fraud-detection work. *Bureau of Special Investigations* v. *Coalition of Pub. Safety,* 430 Mass. at 602. The third case involved an award reinstating a police officer with a history of civil rights violations, including a judgment for compensatory and punitive damages, after he was terminated for an incident in which he broke an elderly woman's arm during an arrest and, in the process, provoked a civil rights suit that his employer paid $350,000 to settle. *Lynn* v. *Thompson,* 435 Mass. 54, 64, cert. denied, 534 U.S. 1131 (2001). In that case, the court concluded an unflattering review of the arbitrator's decision by saying that "we are not free to ignore the arbitrator's conclusions merely because they appear unsound, poorly reasoned, or otherwise flawed." *Ibid.*

Those three cases reflect a deep, generalized commitment to the integrity of arbitration awards and the extremely narrow area within which broad concepts of "public policy" counter that commitment. We think that those cases, particularly when viewed in the context of the arbitrator's findings regarding serious Boston police officer misconduct that had not led to discharges, compel us, albeit with a distinct lack of enthusiasm, to affirm the arbitrator's award here. More concretely, the cases demonstrate that an employee's violation of criminal laws, use of an official position to invade the privacy of citizens, or repeated violations of laws protecting civil rights do not mean that his or her continued employment necessarily violates public policy. That DiSciullo may have done something resembling each of those things during the course of what appears to have been an aberrational outburst does not, therefore, mean that an arbitration order requiring his continued employment violated public policy.

*Judgment affirmed.*

*Kerri E. Tierney* for the plaintiff.
*John M. Becker* for the defendant.