SHERIFF OF SUFFOLK COUNTY *vs.* JAIL OFFICERS & EMPLOYEES OF SUFFOLK COUNTY. No. 03-P-1154. February 1, 2007. *Sheriff. Correction Officer. Arbitration,* Vacating award. *Public Policy.* Further appellate review granted, 448 Mass. 1107 (2007).

As the result of a remand by the Supreme Judicial Court, we reconsider this appeal of an arbitrator's award. See *Sheriff of Suffolk County* v. *Jail Officers & Employees of Suffolk County,* 62 Mass. App. Ct. 915 (2004). To recapitulate, Leonard Gibson, a pretrial detainee housed at the medical unit of the Suffolk County jail, engaged in a verbal altercation with two correction officers and sustained physical injuries as a result of a scuffle with one of the officers. An internal investigation by the sheriff of Suffolk County determined that one of the officers had assaulted Gibson. The sheriff's investigation also disclosed that another correction officer, Joseph Upton, saw some of the salient events, failed to report the matter to his superior officer, and lied to investigators in an attempt to cover up the malfeasance. The sheriff terminated Upton for these violations. Following a grievance of the termination by the defendant union, the arbitrator found that there was just cause for the imposition of discipline against Upton, but revoked his discharge by the sheriff and ordered him suspended for six months without pay or benefits and loss of seniority rights for that period. The sheriff filed a complaint under G. L. c. 150C, § 11, in Superior Court to vacate the arbitration award, arguing that it exceeded the arbitrator's authority and was contrary to public policy. On cross motions for summary judgment, a Superior Court judge denied the sheriff's motion, allowed the union's motion, and affirmed the award.

In the first decision, we considered the public policy question "[i]n light of the Supreme Judicial Court's narrow view of what conduct might violate public policy, see cases collected in *Boston* v. *Boston Police Patrolmen's Assn.,* 60 Mass. App. Ct. 920, 921-922, further appellate review granted, 442 Mass. 1103 (2004)," and affirmed the judgment. *Sheriff of Suffolk County* v. *Jail Officers & Employees of Suffolk County,* 62 Mass. App. Ct. at 916. The Supreme Judicial Court denied the sheriff's petition for further appellate

review without prejudice and remanded the case to this court for reconsideration in light of its subsequent decision in *Boston* v. *Boston Police Patrolmen's Assn.*, 443 Mass. 813 (2005) (*Boston Police*). See *Sheriff of Suffolk County* v. *AFSCME*, 445 Mass. 1101 (2005).

To ascertain whether the limited public policy exception requires us to vacate the arbitrator's decision, "[w]e apply a stringent, three-part analysis." *Boston Police*, 443 Mass. at 818. See *Bureau of Special Investigations* v. *Coalition of Pub. Safety*, 430 Mass. 601, 604-605 (2000) (*Bureau of Special Investigations*). First, the public policy "must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' " *Boston Police*, 443 Mass. at 818, quoting from *Lynn* v. *Thompson*, 435 Mass. 54, 62 (2001), cert. denied, 534 U.S. 1131 (2002).

Second, the conduct involved cannot be "disfavored conduct, in the abstract." *Massachusetts Hy. Dept.* v. *American Fedn. of State, County & Mun. Employees, Council 93*, 420 Mass. 13, 17 (1995) (*Massachusetts Hy. Dept.*), quoting from *Delta Air Lines, Inc.* v. *Air Line Pilots Assn., Intl.*, 861 F.2d 665, 671 (11th Cir. 1988), cert. denied, 493 U.S. 871 (1989). "Rather, to implicate public policy, an arbitrator's award must order reinstatement after an employee has engaged in 'disfavored conduct which is integral to the performance of employment duties.' " *Bureau of Special Investigations*, 430 Mass. at 605, quoting from *Delta Air Lines, Inc.* v. *Air Line Pilots Assn., Intl.*, supra.

Third, "the arbitrator's award reinstating the employee [must violate] public policy to such an extent that the employee's conduct would have required dismissal. . . . Merely showing that the conduct is 'disfavored' by public policy is not sufficient." *Bureau of Special Investigations*, 430 Mass. at 605. See *Massachusetts Hy. Dept.*, 420 Mass. at 19. "The question to be answered is not whether [Upton's conduct] itself violates public policy, but whether the agreement to reinstate him does so." *Boston Police*, 443 Mass. at 819, quoting from *Eastern Associated Coal Corp.* v. *United Mine Workers, Dist. 17*, 531 U.S. 57, 62-63 (2000). "If an award is permissible, even if not optimal for the furtherance of public policy goals, it must be upheld." *Boston Police*, 443 Mass. at 819, quoting from *Massachusetts Hy. Dept.*, 420 Mass. at 19. "Arbitration awards reinstating employees are therefore upheld if the public policy, while disfavoring the employees' conduct, does not require dismissal." *Massachusetts Hy. Dept.*, 420 Mass. at 19 (upholding reinstatement of an employee found with an unregistered gun in his possession while on duty).

When we originally passed on this case, we concluded that the sheriff had satisfied the first two prongs of this test, but had not satisfied the third. See *Sheriff of Suffolk County* v. *Jail Officers & Employees of Suffolk County*, 62 Mass. App. Ct. at 916. We relied at that time on *Boston* v. *Boston Police Patrolmen's Assn.*, 60 Mass. App. Ct. at 921-922, which was then awaiting further review. Taking into account the Supreme Judicial Court's subsequent decision in *Boston Police*, 443 Mass. 813, our view of this case has not changed.

With regard to the first prong, the public policy in this case, as described by the Superior Court judge, was "well defined and dominant": "If the public

policy of Massachusetts proscribes assaults by guards on the detainees committed to their custody — as it surely does — then it must also proscribe the 'code of silence' whereby those committing such assaults are protected." As to the second prong, Upton's conduct was clearly "disfavored" and "integral to the performance of [his] employment duties."

" 'The question to be answered [with regard to the third prong] is not whether [Upton's conduct] itself violates public policy, but whether the agreement to reinstate him does so.' . . . 'If an award is permissible, even if not optimal for the furtherance of public policy goals, it must be upheld.' " *Boston Police*, 443 Mass. at 819 (citations omitted). In the *Boston Police* case, while responding to a call concerning a rowdy party, Officer DiSciullo verbally abused two individuals, acted in an "impatient, harsh and derisive" manner toward them, and falsely arrested them. *Id.* at 814-815. DiSciullo then filed an incident report and a statement of criminal charges against the two individuals that were "knowingly untrue." *Id.* at 815. During the subsequent internal investigation by the police department, DiSciullo gave "his deliberately distorted version of the event" to the investigators. *Id.* at 816. The police department terminated DiSciullo; the arbitrator rescinded the termination and ordered him suspended for one year without pay. *Id.* at 816-817. The Superior Court confirmed the arbitrator's award, and this court "affirmed, 'albeit with a distinct lack of enthusiasm,' based on [our] reading of controlling precedent." *Id.* at 817, quoting from *Boston Police* v. *Boston Police Patrolmen's Assn.*, 60 Mass. App. Ct. at 922. The Supreme Judicial Court determined that "[g]iven the arbitrator's findings that DiSciullo had falsely arrested two individuals on misdemeanor and felony charges, lied in sworn testimony and over a period of two years about his official conduct, and knowingly and intentionally squandered the resources of the criminal justice system on false pretexts, an agreement to reinstate DiSciullo would offend public policy." *Id.* at 819.

In the present case, the arbitrator found that Upton failed to properly maintain a log book of individuals who came into and out of the medical unit to which he was assigned, an offense that impeded the investigation, but which, by itself, would not warrant termination. The arbitrator further found that it was not "a violation of any Standing Order or participation in a conspiracy for Upton to have opened [Gibson's] cell door[, allowing another correction officer to enter the cell and assault Gibson]. . . . Failure to open the door would have been a violation of a direct order. . . . Upton had no advance knowledge of what was going to transpire nor was he a party to it before or during the event." The arbitrator also found that Upton failed to "file some form of a report of an unusual and significant event (i.e., the assault)[, and that he] did not cooperate with the . . . investigation and filed incomplete, misleading or false reports."

In the *Boston Police* case, DiSciullo was the original perpetrator of bad acts who then went on to "shroud[] his own misconduct in an extended web of lies and perjured testimony." *Id.* at 820. In contrast, Upton's conduct was the result of trying to cover up the misdeeds of his fellow correction officers, and not the result of trying to cover up his own misconduct. Such conduct, while condemnable, and requiring substantial discipline, did not compel termination, as it did not "present[] one of those 'rare instances' in which an arbitrator's award must be vacated as contrary to 'an explicit, well-defined,

and dominant public policy.' " *Id.* at 813, quoting from *Eastern Associated Coal Corp.* v. *United Mine Workers, Dist. 17*, 531 U.S. at 62-63.

*Judgment affirmed.*

*Ellen M. Caulo* for the plaintiff.

*Stephen C. Pfaff* for the defendant.