## Sheriff of Suffolk County *vs.* Jail Officers and Employees of Suffolk County.[1]

Suffolk. March 6, 2008. - June 23, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Public Policy. Arbitration,* Collective bargaining, Vacating award. *Public Employment,* Collective bargaining, Termination. *Sheriff.*

This court affirmed a judgment of the Superior Court confirming an arbitrator's award revoking a county sheriff's discharge of a jail officer and requiring that the sheriff instead suspend the officer for six months without pay, where a remand for a new arbitration proceeding would be inappropriate, despite the arbitrator's ambiguous findings on certain key points, given the passage of time (nearly nine years) since the events at issue; the death of the arbitrator (thus precluding a remand for specific findings on the areas of ambiguity); and the current unavailability of several critical witnesses. [700-703]

Civil action commenced in the Superior Court Department on April 24, 2001.

The case was heard by *Thomas P. Billings,* J., on motions for summary judgment.

After review by the Appeals Court, 62 Mass. App. Ct. 915 (2004), and 68 Mass. App. Ct. 903 (2007), the Supreme Judicial Court granted leave to obtain further appellate review.

*Ellen M. Caulo* for the plaintiff.

*Stephen C. Pfaff* for the defendants.

Botsford, J. This case, which concerns an appeal by the sheriff of Suffolk County (sheriff) of an arbitrator's award, presents the question whether public policy requires vacation of the award. We conclude that the ambiguous record does not permit us to

---

[1] In 1999, AFSCME Council 93, Local 1134, was the union representing Upton and the jail officers generally. In 2003, Jail Officers and Employees of Suffolk County (union) was formed and is now the union to which all jail officers employed by the sheriff of Suffolk County (sheriff) belong. This union is the appellee in the present case.

answer that question, but we also conclude that a remand of the case for clarification of the record is not possible, and that in the particular circumstances presented, a remand for a new arbitration proceeding would be inappropriate. Accordingly, we affirm the judgment of the Superior Court confirming the arbitrator's award.

*Background.* This case has a long and tortuous procedural history. On December 29, 1999, the sheriff terminated Officer Joseph Upton from his position as a jail officer at the Nashua Street jail in Boston (jail). His discharge occurred after a disciplinary hearing within the sheriff's department, and was based on the disciplinary hearing officer's determination that Upton, while assigned to the medical unit of the jail on October 16, 1999, had witnessed an assault of an inmate — a nineteen year old man being held in custody awaiting trial — by two other jail officers; had filed untimely and then false reports concerning the October 16 assault incident; had also provided false information to the sheriff's investigative division during its investigation of that assault incident; and had failed properly to maintain the log book in the medical unit. Upton, represented by the union of which he is a member (union), grieved his termination under the provisions of the applicable collective bargaining agreement, and ultimately sought an arbitrator's review. After two days of hearings in November and December of 2000, the arbitrator issued his award on March 26, 2001. He found, inter alia, that the inmate housed in the medical unit where Upton was assigned had indeed been assaulted by other jail officers on October 16, 1999; that Upton had failed to maintain a proper log and to file an appropriate incident report about the October 16 assault; that he did not cooperate with the sheriff's investigation of the incident; and that he filed "incomplete, misleading or false reports."[2] The arbitrator concluded that "just cause" existed for Upton to be disciplined, but further ruled that Upton's discharge was revoked, and that Upton was to be suspended for a period of six months (without pay) and then reinstated with back pay and full benefits.[3] The sheriff filed an appeal in the Superior Court pursuant to G. L.

[2]The arbitrator's findings are discussed in more detail *infra.* The lacunae in those findings are key to our disposition in this case.

[3]Upton was terminated in December, 1999. By the time of the arbitrator's

c. 150C, § 11, seeking to vacate the award on the ground that the order to reinstate Upton exceeded the arbitrator's authority because it was contrary to "well-defined public policy."

On cross motions for summary judgment, a judge in the Superior Court granted the union's motion and confirmed the award. The sheriff appealed the confirmation to the Appeals Court, which affirmed the Superior Court judgment. *Sheriff of Suffolk County* v. *Jail Officers & Employees of Suffolk County*, 62 Mass. App. Ct. 915 (2004). Thereafter, we denied the sheriff's application for further appellate review without prejudice, and remanded the case to the Appeals Court for reconsideration in light of our decision in *Boston* v. *Boston Police Patrolmen's Ass'n*, 443 Mass. 813 (2005) (*Boston Police Patrolmen's Ass'n*). On remand, the Appeals Court again affirmed the Superior Court judgment confirming the arbitrator's award. *Sheriff of Suffolk County* v. *Jail Officers & Employees of Suffolk County*, 68 Mass. App. Ct. 903 (2007). We granted the sheriff's application for further appellate review.

*Discussion.* In accordance with the strong public policy favoring the arbitration of disputes, particularly in the context of collective bargaining agreements, this court (and courts generally) follows the rule that the arbitrator's decision should be upheld. *Boston Police Patrolmen's Ass'n*, 443 Mass. at 818, and cases cited. At the same time, "[w]e do not permit an arbitrator to order a party to engage in an action that offends strong public policy," *id.*, and " 'the question of public policy is ultimately one for resolution by the courts' and not by arbitrators." *Id.*, quoting *Bureau of Special Investigations* v. *Coalition of Pub. Safety*, 430 Mass. 601, 603 (2000). There is a three-pronged test we apply to determine whether public policy requires the court to vacate an arbitrator's award that has ordered the reinstatement of a public employee: (1) the public policy at issue "must be well defined and dominant," and determined from laws and legal precedents, not general considerations of the public interest, *Massachusetts Highway Dep't* v. *American Fed'n of State,*

---

award in March, 2001, more than six months had passed since Upton had been employed as a jail officer at the jail. The effect of the award, therefore, was to provide for Upton's immediate reinstatement and the receipt of back pay.

*County & Mun. Employees, Council 93*, 420 Mass. 13, 16 (1995) (*Mass. Highway*), quoting *W.R. Grace & Co.* v. *Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 766 (1983); (2) the "disfavored conduct" under scrutiny must be "integral to the performance of employment duties," *Mass. Highway, supra* at 17, quoting *Delta Air Lines, Inc.* v. *Air Line Pilots Ass'n, Int'l*, 861 F.2d 665, 671 (11th Cir. 1988), cert. denied, 493 U.S. 871 (1989); and (3) the employee's conduct, as found by the arbitrator, would have required dismissal, and "a lesser sanction would frustrate public policy." *Boston Police Patrolmen's Ass'n, supra* at 819. See *id.* at 818-819. See also *Lynn* v. *Thompson*, 435 Mass. 54, 62-63 (2001), cert. denied, 534 U.S. 1131 (2002); *Bureau of Special Investigations* v. *Coalition of Pub. Safety, supra* at 604-605.

In *Boston Police Patrolmen's Ass'n, supra*, we vacated an arbitrator's award that had required the city of Boston to rescind its discharge of a police officer and to suspend the officer for one year. Our decision to vacate was based on our conclusion that in light of the specific factual findings of the arbitrator concerning the officer's misconduct, dismissal of the officer was required, as any lesser sanction would "frustrate strong public policy against the kind of egregious dishonesty and abuse of official position in which [the officer] was proved to have engaged." *Id.* at 814. The difficulty in this case is that the arbitrator's decision and the factual findings he makes are far from a model of clarity, and he omits to make specific findings on at least two significant points. In particular, while the arbitrator finds that two jail officers, one of whom was a lieutenant and therefore a superior officer, entered a detainee's cell and assaulted the detainee, causing him injury, and that Officer Upton, under the order of the lieutenant — an order that the arbitrator concludes Upton was required to obey — opened the detainee's cell door to let the two other jail officers in, the arbitrator does not make a finding about whether Upton actually witnessed the other officers' assault.[4] In addition, the arbitrator concluded that Upton filed reports with the sheriff's

---

[4]The arbitrator states that two witnesses — the assaulted detainee Leonard Gibson, and another inmate of the jail — "stated they observed Upton in the [medical unit's] Control Booth immediately after the two officers left Gibson's cell and that he was in a position to observe what occurred there." Reciting witness testimony is not the equivalent of a finding on the arbitrator's

internal investigation officers that were incomplete *or* false *or* misleading, but does not attempt to distinguish among these three possibilities.[5]

In a situation where a jail officer actually witnesses fellow officers assault an individual who is held in the sheriff's custody, and then lies about this fact and files false reports that memorialize the falsity, we have little doubt that established public policy would condemn such conduct and would require the discharge of such an officer. As the Superior Court judge observed, "If the public policy of Massachusetts proscribes assaults by guards on the detainees committed to their custody — as it surely does[6] — then it must also proscribe the 'code of silence' whereby those committing such assaults are protected." This is so particularly where — as the sheriff argues occurred in this case — a false "hear no evil, see no evil, speak no evil" approach taken by an officer materially impedes an official investigation of the incident and prevents the sheriff from implementing just discipline on the officers who committed the attack.[7] However, in this case, we believe the arbitrator's findings are not sufficiently clear on what Officer Upton witnessed, or on the character of his reports and participation in the sheriff's investigation — that is, did he supply false information, or was he simply less than complete? In light of the other strong public policy at issue

part, at least in the absence of an explicit indication that the arbitrator credited or accepted this testimony. See *Pizzino* v. *Miller*, 67 Mass. App. Ct. 865, 868-869 n.7 (2004). See also *School Committee of Leominster* v. *Gallagher*, 4 Mass. App. Ct. 195, 200 n.6 (1976).

[5]Because we were not able to tell exactly what the arbitrator found, in an unpublished order issued after oral argument in this case we directed that the matter be remanded to the arbitrator for specific findings on the two points described here. Unfortunately, in the long interval between the arbitrator's award and our hearing this case — a period of seven years — the arbitrator has died, and therefore the order of remand cannot be carried out.

[6]Cf. *Williams* v. *Hartman*, 413 Mass. 398, 403 (1992), quoting *DeShaney* v. *Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989) ("when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being," including adequate medical care).

[7]To the extent the Appeals Court suggests that the coverup of a fellow officer's misconduct, as opposed to a coverup of one's own, would not call for severe discipline, see *Sheriff of Suffolk County* v. *Jail Officers & Employees of Suffolk County*, 68 Mass. App. Ct. 903, 905-906 (2007), we disagree.

here, the policy that favors arbitration, it would not be appropriate to vacate the arbitrator's award based on possibly incorrect factual inferences we might draw from his ambiguous findings.

It is obviously necessary to resolve this case. The events at issue here occurred almost nine years ago. We are not able to obtain supplemental findings from the arbitrator in this case (see note 5, *supra*), and we have been informed by the sheriff that if the court were to remand the matter for rehearing before a different arbitrator, the sheriff would be extremely hampered by the current unavailability of several critical witnesses.[8] In these particular circumstances, we conclude that in order to bring the matter to a final result, the judgment of the Superior Court confirming the original arbitrator's decision should be affirmed.

*So ordered.*

---

[8] The sheriff suggests that we remand the case to be heard by a new arbitrator, but that we require that arbitrator to accept the original arbitrator's identifiable findings, and limit the new arbitrator to making findings on the two issues about which we are not clear, viz., whether Officer Upton actually witnessed the assault on the detainee (or was clearly in a position to do so), and whether he filed affirmatively false reports. This type of limitation on a new arbitrator seems unworkable and potentially unfair. We decline to accept the sheriff's suggestion.