584                                      465 Mass. 584 (2013)

Sheriff of Suffolk County *v.* Jail Officers and Employees of Suffolk County.

## SHERIFF OF SUFFOLK COUNTY *VS.* JAIL OFFICERS AND EMPLOYEES OF SUFFOLK COUNTY.[1]

Suffolk. February 4, 2013. - June 14, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Sheriff. Public Employment,* Collective bargaining, Termination. *Labor,* Public employment, Collective bargaining. *Arbitration,* Collective bargaining, Award. *Damages,* Back pay, Mitigation, Interest. *Interest. Governmental Immunity. Waiver. Judgment,* Enforcement, Interest. *Practice, Civil,* Interest, Waiver.

In a civil action to enforce an arbitrator's award of back pay to a jail officer employed and wrongfully discharged by the sheriff of Suffolk County (sheriff), although the judge erred in concluding that the jail officer had no duty to mitigate his damages by seeking comparable employment, the issue was waived, where the sheriff failed to raise the issue of mitigation of damages before the arbitrator and (despite the fact that the arbitrator's award clearly contemplated to a certain extent the question of damages, yet was silent on the issue of mitigation) failed to raise the mitigation issue as part of her initial challenge to the award; and where, in any event, the sheriff did not meet her burden of proof of comparable employment opportunities. [588-595]

In a civil action to enforce an arbitrator's award of back pay to a jail officer employed and wrongfully discharged by the sheriff of Suffolk County (sheriff), the judge properly declined to assess postjudgment interest, where the sheriff (who, as an agency of the Commonwealth, was entitled to sovereign immunity) was not liable for interest under G. L. c. 235, § 8, and did not waive her entitlement to sovereign immunity by agreeing to submit the dispute to arbitration under a collective bargaining agreement; and where equitable considerations did not require an award of postjudgment interest. [595-599]

CIVIL ACTION commenced in the Superior Court Department on April 24, 2001.

[1] In 1999, AFSCME Council 93, Local 1134, was the union representing Joseph Upton and the jail officers generally. In 2003, Jail Officers and Employees of Suffolk County (union) was formed and is now the union to which all jail officers employed by the sheriff of Suffolk County (sheriff) belong. This union is the appellee in the present case. See *Sheriff of Suffolk County* v. *Jail Officers & Employees of Suffolk County,* 451 Mass. 698, 698 n.1 (2008) (*Sheriff of Suffolk County I*).

Following review by this court, 451 Mass. 698 (2008), a complaint for contempt, filed on August 24, 2009, was heard by *John C. Cratsley,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Timothy J. Casey,* Assistant Attorney General, for the plaintiff.

*John M. Becker* for the defendant.

CORDY, J. This appeal arises from an action in the Superior Court to enforce an arbitrator's award of back pay to a jail officer employed and wrongfully discharged by the sheriff of Suffolk County (sheriff). The sheriff appeals from the judge's ruling that the jail officer, Joseph Upton, had no duty to mitigate his damages by seeking comparable employment. The Jail Officers and Employees of Suffolk County (union), on behalf of Upton, cross appeals from the judge's decision not to assess statutory postjudgment interest on the arbitrator's award. Although we conclude that Upton did have a duty to mitigate his damages, we affirm the judgment on the grounds that the sheriff waived this issue by failing to raise it earlier in the proceedings, and that, regardless, she failed to meet her burden of proof on the issue.[2] We also affirm the judge's decision not to assess postjudgment interest on sovereign immunity grounds.

1. *Background.* This appeal represents the putative final chapter in a case that, at the time of an earlier decision in 2008, already had a "long and tortuous procedural history." *Sheriff of Suffolk County* v. *Jail Officers & Employees of Suffolk County,* 451 Mass. 698, 699 (2008) (*Sheriff of Suffolk County I*). On December 29, 1999, Upton was discharged from his position as a jail officer at the Nashua Street jail in Boston (jail) following an incident in which Upton allegedly "filed untimely and then false reports" concerning an assault of an inmate that he witnessed. *Id.* On Upton's behalf, the union grieved the termination pursuant to the applicable collective bargaining agreement, and ultimately sought an arbitrator's review. *Id.* Following two days of hearings in November and December, 2000, the arbitra-

---

[2]At the time this matter was litigated in the Superior Court, the sheriff of Suffolk County was a woman. Currently, the sheriff of Suffolk County is a man. As a matter of convenience, we will refer to the sheriff of Suffolk County as "she" in this opinion.

tor found, inter alia, that Upton had filed "incomplete, misleading or false reports" concerning the assault, but ruled that although the sheriff had "just cause" to discipline Upton, Upton should not have been discharged. *Id.* The arbitrator ordered that Upton was to be suspended for six months without pay and then reinstated "with full back pay and benefits, less any outside earnings and/or unemployment compensation."[3]

The sheriff filed an appeal in the Superior Court pursuant to G. L. c. 150C, § 11, seeking to vacate the award on the ground that the order reinstating Upton exceeded the arbitrator's authority because it was contrary to "well-defined public policy." *Id.* at 699-700. The Superior Court confirmed the award. *Id.* at 700. The sheriff appealed the confirmation to the Appeals Court, which also affirmed the judgment. *Sheriff of Suffolk County v. Jail Officers & Employees of Suffolk County*, 62 Mass. App. Ct. 915 (2004). We denied the sheriff's application for further appellate review without prejudice, remanding the case to the Appeals Court for reconsideration in light of our decision in *Boston v. Boston Police Patrolmen's Ass'n*, 443 Mass. 813 (2005), regarding public policy grounds for setting aside arbitration awards. *Sheriff of Suffolk County I, supra* at 700. On remand, the Appeals Court again affirmed the Superior Court judgment confirming the arbitrator's award, *Sheriff of Suffolk County v. Jail Officers & Employees of Suffolk County*, 68 Mass. App. Ct. 903 (2007). We then granted the sheriff's application for further appellate review. *Sheriff of Suffolk County I, supra* at 700. Although we determined that "the ambiguous record [did] not permit us to answer [the] question [whether public policy requires vacation of the award]," we concluded that "a remand of the case for clarification of the record [was] not possible, and that in the particular circumstances presented, a remand for a new arbitration proceeding would [have been] inappropriate." *Id.* at 698-699. By the time of our decision, the arbitrator had died, and it would have been impractical to remand the matter for rehearing before a different arbitrator due to the "unavailability

---

[3]By the time of the arbitrator's award in March, 2001, well over six months had elapsed since Upton's discharge in December, 1999. The effect of the award was thus to provide for Upton's immediate reinstatement and receipt of back pay. *Sheriff of Suffolk County I, supra* at 699 n.3.

of several critical witnesses" almost nine years after Upton had been discharged. *Id.* at 702 n.5, 703. Accordingly, because it was "obviously necessary to resolve [the] case," we affirmed the judgment of the Superior Court confirming the arbitrator's award. *Id.* at 703. Following our affirmance in a decision released on June 23, 2008, judgment entered in the Superior Court on July 25, 2008, and Upton was reinstated and returned to work in August, 2008.

2. *Dispute over back pay award.* On his return to work, Upton executed a document under the pains and penalties of perjury declaring that his offset earnings in the nearly nine years since his discharge totaled $14,943. As of August, 2009, the sheriff had not paid Upton any back pay pursuant to the arbitrator's award. Consequently, on August 24, 2009, the union filed a complaint for contempt in the Superior Court asking that the sheriff be held in contempt for failing to pay back pay pursuant to the 2008 Superior Court judgment confirming the arbitrator's award. In the unique procedural circumstances of this case, the judge determined to hold an evidentiary hearing, not on the matter of contempt, but rather on the proper calculation of back pay (minus offsets) that Upton was entitled to receive under the terms of the arbitrator's award, which had continued to accrue during the approximately eight-year period between the time of the award and the date on which Upton was reinstated. Following the hearing, the parties submitted proposed findings of fact and rulings of law. The judge issued a decision on April 12, 2011, ruling that Upton had no duty to mitigate his damages or that, alternatively, the sheriff had failed to meet her burden of proof on the issue of mitigation, such that Upton was owed the full amount of back pay due less only actual earnings and unemployment compensation. The judge further ruled that Upton was not entitled to postjudgment interest on the award.

In addition to recounting the procedural history detailed above, the judge made the following findings of fact. Upton did not work regularly following his discharge from the jail. He did not actively look for a new job due to his belief that he would be reinstated when he continually prevailed at every stage of the litigation. During his period of unemployment, Upton received significant amounts of money from his parents in order to pay

bills and take care of his children. In 2000, Upton received $12,930 in unemployment compensation. In January, 2004, Upton represented on an automobile loan application that he was employed at a restaurant in Charlestown where he earned $2,000 per month and had worked for eighteen years. However, in reality, Upton had not worked at that restaurant since before 1991. Upton had trained as a carpenter, and in 2006 and 2007, he worked as a self-employed carpenter earning $5,000 per year. In January, 2007, Upton applied for another automobile loan, stating on the application that he had worked continuously as a carpenter since 2000 and earned $2,400 per month. The judge found that Upton had lied on both loan applications in order to ensure that he received the loans, and that his only earnings in 2006 and 2007 were the $10,000 he made as a carpenter. In January, 2008, Upton worked for two weeks as a bouncer, earning $1,280. He was injured on the job and later received $10,500 in workers' compensation.

From those findings, the judge identified six items of offset totaling $36,723,[4] which, when subtracted from the gross back pay due ($431,447.67), meant Upton was owed $394,724.67 in back pay.[5] The judge concluded that Upton "reasonably believed that he would be returning to work after the [arbitrator's] award was issued [and,] [t]herefore, [he had] no duty to mitigate his damages, and must subtract only his actual interim earnings from his gross back pay award." Alternatively, the judge held that the sheriff had "failed to show at trial what [Upton] could have earned in a substantially similar full-time position elsewhere."

3. *Discussion.* a. *Mitigation of damages.* Following a bench trial, we review a judge's findings of fact under the clearly erroneous standard and his conclusions of law de novo. *Casavant* v. *Norwegian Cruise Line Ltd.*, 460 Mass. 500, 503 (2011). *City*

---

[4]This figure was achieved by adding Upton's unemployment compensation, his earnings as a carpenter and a bouncer, his worker's compensation payment, and payments from the city of Boston and the City of Boston Credit Union, of $1,034 and $979, respectively. These two payments were drawn from the sworn statement of offset earnings made by Upton on his return to work at the jail, although their exact nature is unclear from the record.

[5]Per stipulation of the parties, the gross back pay due to Upton totals $431,447.67 before any offsets are applied.

*Rentals, LLC* v. *BBC Co.*, 79 Mass. App. Ct. 559, 560 (2011). On appeal, the sheriff challenges the judge's ruling that Upton had no duty to mitigate his damages or, in the alternative, that the sheriff failed to meet her burden of proof on this issue.

As an initial matter, it is not entirely clear on what basis the judge concluded that Upton "[had] no duty to mitigate his damages," or what exactly the judge intended that statement to mean. In their briefs before this court, the parties have focused a great deal on the significance of the arbitral award's silence on the mitigation of damages issue, but it does not appear that the judge considered this fact in reaching his conclusion that no duty existed. While we ultimately agree with the judge's conclusion that the sheriff failed to meet her burden of proof on the mitigation of damages issue, and also conclude that the sheriff waived the issue, we disagree that Upton had no duty to mitigate.

It is a well-established rule that "[w]here one is under contract for personal service, and is discharged, it becomes his duty to dispose of his time in a reasonable way, so as to obtain as large compensation as possible, and to use honest, earnest and intelligent efforts to this end. He cannot voluntarily remain idle and expect to recover the compensation stipulated in the contract from the other party." *Maynard* v. *Royal Worcester Corset Co.*, 200 Mass. 1, 6 (1908) (*Maynard*). See *Ryan* v. *Superintendent of Schs. of Quincy*, 374 Mass. 670, 672 (1978) (*Ryan*); *McKenna* v. *Commissioner of Mental Health*, 347 Mass. 674, 675-676 (1964) (*McKenna*); Restatement (Second) of Contracts § 350, at 126 (1981). It is further recognized that "[t]his general principle is applicable to public employees who are reinstated after having been unlawfully discharged." *Ryan, supra* (public school teacher). See *Police Comm'r of Boston* v. *Ciccolo*, 356 Mass. 555, 559 (1969) (police officer); *McKenna, supra* (State hospital employee). We see no reason why, as a general matter, this principle should not apply in Upton's case.[6]

We also disagree with the union's contention that the arbitra-

---

[6] In concluding that Upton had no duty to mitigate, the judge relied, at least in part, on language from *McKenna* v. *Commissioner of Mental Health*, 347 Mass. 674, 676-677 (1964) (*McKenna*), stating that "there is no judicial penalty" for failure to make an effort to find substitute employment. *Id.* at 676, quoting Corbin, Contracts § 1039. However, the court in *McKenna* went on to explain that "if [the employee] fails to make the reasonable effort [to

tion award's silence on the mitigation issue necessarily means that no such duty applied to Upton. There is nothing in the record to suggest that the issue of mitigation of damages was raised or contested before the arbitrator, or that he considered or decided the issue in granting the award. The arbitrator's award simply reads:

> "Upton's discharge is revoked and he is suspended for six months with no pay or benefits and without accumulation of seniority during that period of time effective from the original date of discharged.
>
> "Thereafter he will be reinstated with full back pay and benefits, less any outside earnings and/or unemployment compensation."

While there are no reported decisions from courts in the Commonwealth addressing the precise situation where an arbitrator's award is silent on the duty to mitigate, two cases from the United States Court of Appeals for the Seventh Circuit are instructive. In *Automobile Mechanics Local 701* v. *Joe Mitchell Buick, Inc.*, 930 F.2d 576 (7th Cir. 1991) (*Joe Mitchell Buick*), the court held that an arbitrator has the discretion to decide whether an award of reinstatement and repayment for loss of earnings includes in it a duty to mitigate damages. In a case *where the employer expressly raised mitigation before the arbitrator*, the court reasoned, "[i]t is settled that arbitrators have discretion to decide whether lost earnings should be offset by interim earnings or a failure to mitigate, so that their silence on such issues means that no such offsets are to be made." *Id.* at 578.

However, a slightly different case is presented where neither party raised the issue before the arbitrator. In *International Union of Operating Eng'rs, Local No. 841* v. *Murphy Co.*, 82 F.3d 185, 186 (7th Cir. 1996) (*Murphy Co.*), the court was

find substitute employment] with the result that his injury is greater than it would otherwise have been . . . [t]he law does not penalize his inaction; *it merely does nothing to compensate . . . for the loss that he helped to cause by not avoiding it*" (emphasis added). *McKenna, supra.* The statement that there is no "judicial penalty" for failing to mitigate one's damages is thus largely semantic.

faced with an arbitrator's award ordering that a group of union employees who had been fired "be reinstated to the employment and made whole." Neither party raised the issue of damages at the arbitration proceeding, which instead "focused exclusively on the propriety of the firings." *Id.* The employer argued that the phrase, "made whole," was ambiguous and imposed what the employer deemed to be appropriate offsets for interim earnings. *Id.* at 186-187. While not agreeing with the employer that the award was necessarily ambiguous, the court acknowledged that, "[g]iven the lack of evidence, the arbitrator's decision to rule on the damages issue is certainly questionable," and the arbitrator may have exceeded his authority by issuing "an award based 'upon a matter not submitted' to the arbitrator." *Id.* at 187, quoting 9 U.S.C. § 11(b) (1994). Nevertheless, the court held the employer waived the offset issue because the employer failed to raise it before the arbitrator, or in the alternative, to challenge the arbitration award within the three-month time period provided by the Federal Arbitration Act, 9 U.S.C. § 12 (1994) (FAA). *Murphy Co., supra* at 188-190. Although we take no position on the rule of the Seventh Circuit that silence on the issue of mitigation is to be considered an unambiguous statement that no such duty exists, see *Murphy Co., supra* at 189, citing *Joe Mitchell Buick, supra* at 578, we agree with the holdings in both *Joe Mitchell Buick* and *Murphy Co.* insofar as they take into consideration whether the issue was explicitly raised before the arbitrator, as in *Joe Mitchell Buick, supra* at 578, or whether any challenge to the award was waived by a failure to raise the issue of mitigation before the arbitrator or, in a timely fashion, to challenge the award as having exceeded the arbitrator's authority, as in *Murphy Co., supra* at 188-190.

Here, the sheriff failed to raise the issue of mitigation of damages before the arbitrator. And, despite the fact that the arbitrator's award clearly contemplated to a certain extent the question of damages — as evidenced by its provision for offsets for outside earnings and unemployment compensation — yet was silent on the issue of mitigation, the sheriff did not raise the mitigation issue as part of her initial challenge to the award pursuant to G. L. c. 150C, § 11, that ultimately culminated in

our decision in *Sheriff of Suffolk County I, supra.* Like their Federal counterpart, 9 U.S.C. § 12, which requires that challenges to arbitral awards be commenced within three months from the date of the award, G. L. c. 150C, §§ 11 and 12, require that actions to vacate, modify, or correct an arbitral award be commenced within thirty days of the issuance of the award. While the sheriff timely filed her action to vacate the award on the ground that the order to reinstate Upton was contrary to public policy, see *Sheriff of Suffolk County I, supra* at 699-700, the sheriff raised the mitigation issue for the first time in response to the union's motion for contempt in the Superior Court, which the union filed in August, 2009, more than eight years after the issuance of the arbitrator's award. "Unless grounds are urged for vacating, modifying or correcting the award within [the thirty-day period set forth in G. L. c. 150C, §§ 11 and 12], the award becomes virtually impregnable." *Derwin* v. *General Dynamics Corp.*, 719 F.2d 484, 489 (1st Cir. 1983). Accordingly, the issue is waived.

Even if the mitigation issue were not waived, the union would still prevail. The employer bears the burden of proof on the issue of mitigation of damages. *McKenna, supra* at 677, and cases cited. An employer meets this burden of proof by proving the following:

> "(a) one or more discoverable opportunities for comparable employment were available in a location as convenient as, or more convenient than, the place of former employment, (b) the improperly discharged employee unreasonably made no attempt to apply for any such job, and (c) it was reasonably likely that the former employee would obtain one of those comparable jobs."

*Black* v. *School Comm. of Malden*, 369 Mass. 657, 661-662 (1976) (*Black*). Additionally, the employer must show what the employee "could have earned in other similar work." *McKenna, supra.* This court has not articulated a clear definition of "comparable employment" in the context of mitigation of damages, apart from opining that comparable employment for a tenured art teacher who had been wrongfully discharged included both tenured and nontenured art teacher positions. See *Ryan,*

*supra* at 676. Accordingly, we turn to other jurisdictions for guidance. In *Ford Motor Co.* v. *Equal Employment Opportunity Comm'n*, 458 U.S. 219, 231 (1982), the United States Supreme Court reasoned that an "unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position." Other jurisdictions have similarly defined comparable employment as employment that offers similar long-term benefits and opportunities for promotion as compared to the original position. See *Greenway* v. *Buffalo Hilton Hotel*, 951 F. Supp. 1039, 1061 (W.D.N.Y. 1997), aff'd as modified, 143 F.3d 47 (2d Cir. 1998) ("In order for the work to be comparable or substantially similar, the new position must afford a plaintiff virtually identical promotional opportunities, compensation, job responsibilities, working condition, and status as the former position"). See also *Rasimas* v. *Michigan Dep't of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983), cert. denied, 466 U.S. 950 (1984); *Meyer* v. *United Air Lines, Inc.*, 950 F. Supp. 874, 876 (N.D. Ill. 1997).

The sheriff relies on a single case, *McKenna, supra*, for its statement that "[the discharged employee] is entitled to recover his back salary less what he did in fact earn following his discharge or in the exercise of proper diligence might have earned in another employment," to argue that she met her burden of proof by "demonstrat[ing] what Upton actually earned, or in the exercise of reasonable diligence would have earned elsewhere." This argument is without merit. While that lone excerpt from *McKenna* does not use the term "comparable employment," it is beyond dispute that an employer must demonstrate the availability of "comparable employment," not just any employment. See, e.g., *Ryan, supra*; *Black, supra*. Given Upton's occupation as a correction officer, it is simply irrelevant to the issue of mitigation that he may have been able to further offset his lost earnings by working on a more permanent basis as a restaurant employee, carpenter, or bouncer. It is quite clear that the three positions identified by the sheriff are not comparable or remotely similar to Upton's employment as a correction officer. Further, employment as a restaurant employee, carpenter, or bouncer does not offer the same stability, benefits, or potential for promotion. Accordingly, the judge correctly concluded that the sheriff had

failed to demonstrate the availability of comparable employment opportunities, or what Upton could have earned in an available comparable position elsewhere.[7]

Presumably recognizing that she has not met her burden of proof of comparable employment opportunities, the sheriff urges this court to adopt the rule set forth in *Quint* v. *A.E. Staley Mfg. Co.*, 172 F.3d 1, 16 (1st Cir. 1999), that "where an employee has remained completely idle following her discharge," the employer "should be relieved of any burden to prove the existence of substantially equivalent positions." The stated rationale behind this rule is that where a discharged employee has declined to seek other employment, it is "reasonable to presume that she did so for an articulable reason," such as her belief "that a job search would have been futile," and that she "is likely to be in the better position to explain her preemptive decision to take no action to obtain employment." *Id.* We decline to adopt this rule. First, the *Quint* decision does not make entirely clear whether the burden shifts from the employer to the employee where the employee "has remained completely idle," *id.*, and sought *no* employment of any kind, or instead where the employee has failed to seek *comparable employment*. See *id.* (noting employer bears burden "[a]s long as the claimant has made some effort to secure *other* employment," but variously stating burden shifts "once an employer has shown that the claimant sought *no jobs*," and "once it has been shown that the former employee made no effort to secure *suitable* employment" [emphases added]). Second, and more importantly, we concur in the view expressed by the United States Court of Appeals for the Sixth Circuit that "basic principles of equity and fairness mandate that the burden

[7] In addition to the fact the three employment opportunities advanced by the sheriff cannot be considered comparable in any way to Upton's employment as a correction officer, we reject the sheriff's attempt to offer Upton's falsified automobile loan applications as evidence of what Upton could have earned had he worked as a restaurant employee or carpenter on a more permanent, full-time basis. Although the judge considered those loan applications in the context of determining the amount of Upton's offset earnings, the judge was well within his discretion in finding that the automobile loan applications did not reflect the defendant's actual income during the relevant period, and the sheriff presented no evidence that the earnings claimed on the applications reasonably approximated what Upton actually would have earned at those jobs if he had held them for the periods that he claimed.

of proof must remain on the employer because the employer's illegal discharge of the employee precipitated the search for another job." *National Labor Relations Bd.* v. *Westin Hotel*, 758 F.2d 1126, 1130 (6th Cir. 1985).

b. *Postjudgment interest.* The union cross-appeals from the part of the judge's order denying its request for postjudgment interest. The judge declined to assess postjudgment interest, reasoning that the sheriff is an agency of the Commonwealth entitled to sovereign immunity following the sheriff department's transfer to the Commonwealth on January 1, 2010, by St. 2009, c. 61, §§ 3 and 26, and postjudgment interest is not available against the Commonwealth in contract claims. *C & M Constr. Co.* v. *Commonwealth*, 396 Mass. 390, 391-392 (1985) (*C & M Constr. Co.*). The judge did not consider whether the sheriff enjoyed immunity from postjudgment interest prior to the transfer to the Commonwealth. In its brief before this court, the union states without citation that the sheriff did not enjoy sovereign immunity prior to the transfer, and that, because the obligation to pay interest arose prior to the transfer, the sheriff must pay interest from the date of the arbitration award until the date of the transfer on January 1, 2010. See St. 2009, c. 61, § 6 ("Notwithstanding any general or special law to the contrary, all valid liabilities and debts of the office of a transferred sheriff, which are in force on the effective date of this act, shall be obligations of the commonwealth as of that date . . ."). Alternatively, the union argues that two exceptions to the application of sovereign immunity should apply in this case: that even if sovereign immunity would otherwise bar an award of postjudgment interest, the sheriff has waived that immunity by submitting the dispute to arbitration; and that equitable considerations require the awarding of postjudgment interest here, where the sheriff's continued pursuit of appeals over the better part of one decade has "unduly delayed the proceedings" and resulted in Upton being unreasonably denied his back pay. The sheriff counters that the union's claim for postjudgment interest is barred because it did not arise until 2011, more than one year after the transfer, when the union first requested postjudgment interest as part of its proposed findings of fact and rulings of law following the bench trial. The sheriff also disputes the

applicability of either of the "exceptions" to immunity against postjudgment interest advanced by the union.

In their briefs, neither party addresses at any length or with any citation whether the sheriff actually possessed sovereign immunity prior to the 2010 transfer, and neither party was prepared to argue the matter at oral argument. In a postargument submission, the sheriff takes the position that she was entitled to sovereign immunity at all times relevant to the present litigation, and has not waived her immunity from postjudgment interest. In its response, the union effectively concedes that, absent waiver, the sheriff was indeed entitled to sovereign immunity, and chooses instead to readvance its argument that the sheriff waived immunity from postjudgment interest by agreeing to submit the dispute to arbitration as part of the collective bargaining agreement. Accordingly, we assume without deciding that the sheriff was, as a general matter, entitled to sovereign immunity prior to 2010, see *Boston* v. *Massachusetts Comm'n Against Discrimination*, 39 Mass. App. Ct. 234, 245 (1995), and take up the union's waiver arguments.

"[A]n action for interest after judgment is a separate action based upon a statutory right and is not part of the underlying claim on which the judgment is based." *C & M Constr. Co.*, *supra* at 391-392. See G. L. c. 235, § 8. A public entity's consent to suit on a contract by virtue of entering into that contract does not thus constitute a waiver of immunity from postjudgment interest. *C & M Constr. Co.*, *supra*. Accordingly, the question becomes "whether there is any other source of waiver of sovereign immunity." *Id.* at 392. This court has already held that perhaps the most likely potential source, the postjudgment interest statute itself, G. L. c. 235, § 8, does not effect such a waiver.[8] *C & M Constr. Co.*, *supra* at 393. *Broadhurst* v. *Director of the Div. of Employment Sec.*, 373 Mass. 720, 726 (1977) (enactment of statute awarding postjudgment interest against Commonwealth in eminent domain cases evidenced legislative intent that G. L. c. 235, § 8, not be applied to claims against

---

[8]General Laws c. 235, § 8, generally provides for postjudgment interest on judgments "rendered upon an award of . . . a committee or referees, or upon the report of an auditor or master, or upon the verdict of a jury or the finding of a justice."

Commonwealth). Nor does "[t]he primary statutory basis for the waiver of sovereign immunity," the Massachusetts Tort Claims Act, G. L. c. 258, impose liability on the Commonwealth for postjudgment interest. *C & M Constr. Co.*, *supra* at 392. See *Onofrio* v. *Department of Mental Health*, 411 Mass. 657, 658 (1992). Therefore, the general rule is that "the Commonwealth . . . is not liable for postjudgment interest in the absence of a clear statutory waiver of sovereign immunity in that regard." *Chapman* v. *University of Mass. Med. Ctr.*, 423 Mass. 584, 586 (1996) (*Chapman*).

The union principally argues that the sheriff waived any immunity from postjudgment interest by agreeing to arbitrate the dispute under the collective bargaining agreement. It cites to only one case on point, *Massachusetts Highway Dep't* v. *Perini Corp.*, 79 Mass. App. Ct. 430 (2011), which affirmed the confirmation of an arbitrator's award of postjudgment interest over a public entity's[9] claim of sovereign immunity, on the ground that the public entity did not need to specifically consent to postaward interest where it "consented to be bound by the [arbitrator's] resolution of the claims involved," *id.* at 442, pursuant to a postdispute agreement to arbitrate certain identified claims. *Id.* at 432. The court further explained:

> "[I]n light of the broad authority given to the [arbitrator] in the parties' [postdispute agreement to arbitrate], and the narrow scope of review provided by the Legislature . . . we believe that [the public entity's] waiver of sovereign immunity to arbitrate these claims included an implicit waiver from paying interest as part of the relief to be granted by the [arbitrator]."

*Id.* at 444. The remainder of the cases cited by the union in support of its waiver argument do not discuss sovereign immunity at all, and presumably the issue was not raised. See *Watertown Firefighters, Local 1347, I.A.F.F., AFL-CIO* v. *Watertown*, 376 Mass. 706, 710, 717-718 (1978) (affirming judge's imposition

---

[9]The public entity was a joint venture between the Massachusetts Highway Department and the Massachusetts Turnpike Authority, formed in connection with the Central Artery/Tunnel project. *Massachusetts Highway Dep't* v. *Perini Corp.*, 79 Mass. App. Ct. 430, 431 (2011).

of interest on arbitrator's award against town); *Marlborough Firefighters, Local 1714, I.A.F.F., AFL-CIO* v. *Marlborough*, 375 Mass. 593, 600-601 (1978) (same); *Coughlan Constr. Co.* v. *Rockport*, 23 Mass. App. Ct. 994, 997-998 (1987) (same); *Blue Hills Regional Dist. Sch. Comm.* v. *Flight*, 10 Mass. App. Ct. 459, 471-473 (1980), *S.C.*, 383 Mass. 642 (1981) (affirming confirmation of arbitrator's award of postjudgment interest against school committee); *Arlington* v. *Local 1297, Int'l Ass'n of Firefighters, AFL-CIO*, 6 Mass. App. Ct. 874, 875 (1978) (finding error in Superior Court judge's failure to award interest on judgment confirming arbitrator's award). Of those cases, the only one that discussed the award of interest in any depth noted that the arbitrator's award of interest was "not subject to the statutory provisions which apply to court-awarded interest on contract claims," and "the fact that 'the award . . . grants relief such that it could not grant or would not be granted by a court . . . shall not be ground for vacating or refusing to confirm the award.' " *Blue Hills Regional Dist. Sch. Comm.* v. *Flight, supra* at 472-473, quoting G. L. c. 150C, § 11 (*a*) (5). See *Superadio Ltd. Partnership* v. *Winstar Radio Prods., LLC*, 446 Mass. 330, 339 (2006), quoting *Advanced Micro Devices, Inc.* v. *Intel Corp.*, 9 Cal. 4th 362, 376 (1994) ("arbitrators, unless expressly restricted by the agreement or the submission to arbitration, have substantial discretion to determine the scope of their contractual authority to fashion remedies").

Here, we need not consider whether or the extent to which the arbitrator legitimately may have awarded postaward interest, or whether such an award would survive a sovereign immunity challenge by the sheriff, since the arbitrator made no such award. See *M. O'Connor Contracting, Inc.* v. *Brockton*, 61 Mass. App. Ct. 278, 283-286 (2004) (vacating on sovereign immunity grounds confirmation of arbitrator's award of multiple damages on G. L. c. 93A claim against municipality). The union indicates in its brief that it seeks a judicial award of postjudgment interest pursuant to G. L. c. 235, § 8. As our cases clearly indicate, entities entitled to sovereign immunity are not liable for interest under G. L. c. 235, § 8, absent an unequivocal statutory waiver not present here. See, e.g., *Chapman, supra* at 586; *C & M Constr. Co., supra* at 391-393. Accordingly, the union's waiver argument must fail.

Alternatively, the union argues that equitable considerations require an award of postjudgment interest where, as they contend occurred here, the employer "has unduly delayed the proceedings such that the employee is deprived of his back pay for an unreasonable length of time." The cases on which the union relies in support of this argument, *Perkins Sch. for the Blind* v. *Rate Setting Comm'n,* 383 Mass. 825 (1981) *(Perkins),* and *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare,* 359 Mass. 206 (1971), are inapposite. As this court has already recognized, *"Perkins* did not involve a claim for interest on a judgment [pursuant to G. L. c. 235, § 8], but rather was a case of unreasonable detention of money due under a contract," with the difference being "that in a *Perkins* situation the interest held to be due is 'a remedy based on a contractual obligation of the Commonwealth.' " *C & M Constr. Co., supra* at 394, quoting *Sargeant* v. *Commissioner of Pub. Welfare,* 383 Mass. 808, 814 (1981). Similarly, *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare, supra* at 208-209, addressed a situation where a department of the city of Boston wrongfully failed to pay medical bills on behalf of patients receiving public assistance despite the fact that "[i]n no instance [was] the Boston department's obligation to pay for the care in dispute." Therefore, these two cases have no application here, where the delay in paying money due under an arbitrator's award owes to the sheriff's "legitimate appeal" of that award, cf. *Chapman, supra* at 588, and the interest sought is statutory postjudgment interest. See *C & M Constr. Co., supra* at 393-394.

*Judgment affirmed.*